ELLIN DAVTYAN (238608)
General Counsel
KIRSTEN GALLER (227171)
Deputy General Counsel
JENNIFER KO (324623)
Assistant General Counsel
OFFICE OF GENERAL COUNSEL
THE STATE BAR OF CALIFORNIA
845 South Figueroa Street
Los Angeles CA 90017
Telephone: (213) 765-1269 / Fax: (415) 538-2321

JEAN R. KRASILNIKOFF (280450)
Assistant General Counsel
HELENE A. SIMVOULAKIS-PANOS (256334)
Assistant General Counsel
OFFICE OF GENERAL COUNSEL
THE STATE BAR OF CALIFORNIA
180 Howard Street
San Francisco, CA 94105-1639
Tel: (415) 538-2388
Fax: (415) 538-2321
Email: helene.simvoulakis-panos@calbar.ca.gov

Attorneys for Defendants
STATE BAR OF CALIFORNIA, BOARD
OF TRUSTEES, COMMITTEE OF BAR
EXAMINERS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRENCE BREWER<br><br>    Plaintiff,<br><br>vs.<br><br>CALIFORNIA STATE BAR; BOARD<br>OF TRUSTEES; COMMITTEE OF BAR<br>EXAMINERS; and THEIR AGENTS IN<br>THEIR OFFICIAL CAPACITY; and<br>DOES 1 through 50, inclusive,<br><br>    Defendants. | Case No.:  2:23-cv-00860-TLN-JDP<br><br>**DEFENDANTS THE STATE BAR OF CALIFORNIA, BOARD OF TRUSTEES, AND COMMITTEE OF BAR EXAMINERS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE:   May 22, 2025<br>TIME:    10:00 a.m.<br>COURTROOM: 9, 13th Floor<br>JUDGE:   Hon. Jeremy D. Peterson |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**NOTICE OF MOTION AND MOTION TO DISMISS**</u>

**TO PLAINTIFF IN PRO PER:**

     **PLEASE TAKE NOTICE** that on May 22, 2025, at 10:00 a.m., or as soon thereafter as this matter may be heard, before Magistrate Judge Jeremy D. Peterson Courtroom 9, 13th Floor, of the United States District Court for the Eastern District of California, located at the Robert T. Matsui United States Courthouse, 501 I Street, Sacramento, CA 95814, Defendants the State Bar of California, Board of Trustees, and Committee of Bar Examiners (collectively, the "State Bar Defendants") will and hereby do move the Court for an Order dismissing Plaintiff Terrence Brewer's ("Plaintiff") Second Amended Complaint as to both claims against State Bar Defendants pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

     This motion is based on the following grounds: first, the Eleventh Amendment bars Plaintiff's suit against the State Bar Defendants. Second, the Second Amended Complaint fails to state a claim upon which relief may be granted because: (1) Plaintiff fails to state a retaliation claim under the Americans with Disabilities Act ("ADA"); (2) Plaintiff fails to allege that the State Bar Defendants threatened him or that any threat had a nexus to his exercise or enjoyment of any right protected by the ADA, as required to state a claim for coercion under the ADA; and (3) Plaintiff's attempt to seek compensatory and punitive damages from the State Bar Defendants fails as a matter of law.

     This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and records incorporated therein, all pleadings and papers on file in this action and any related actions, and oral argument as may be presented to the Court.

Dated: April 17, 2025          STATE BAR OF CALIFORNIA
                           OFFICE OF THE GENERAL COUNSEL


By: */s/ JEAN R. KRASILNIKOFF*
      JEAN R. KRASILNIKOFF
      Assistant General Counsel
      Attorneys for Defendants
      STATE BAR OF CALIFORNIA, BOARD OF
      TRUSTEES, COMMITTEE OF BAR
      EXAMINERS

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................1

II.   STATEMENT OF FACTS ..................................................................................2

    A.   The State Bar of California Is the Administrative Arm of the California Supreme Court in Matters of Attorney Licensing. ......................................2

    B.   The State Bar Testing Accommodation Process ................................2

    C.   Bar Exam Grading Process ...............................................................3

    D.   Plaintiff's Attempts to Pass the Bar Exam and the Filing of This Lawsuit............3

III.  LEGAL STANDARD ..........................................................................................6

IV.   ARGUMENT .......................................................................................................6

    A.   The Complaint Should Be Dismissed Without Leave to Amend Under Rule 12(b)(1) and 12(b)(6) Because the Eleventh Amendment Bars Plaintiff's Claims ...............................................................................6

        1.   First *Georgia* Factor: Plaintiff Has Not Alleged a Violation of Title II.....8

        2.   Second *Georgia* Factor: Plaintiff Does Not Allege a Violation of the Fourteenth Amendment ..................................................10

        3.   Third *Georgia* Factor: Congress' Prophylactic Power Under Section 5 Does Not Extend to the Professional Licensing Context .........11

            a.   The Relevant Level of Inquiry Is Professional Licensing...........12

            b.   The Congressional Record Contains No Evidence of a Pattern of Unconstitutional Discrimination by States Concerning Professional Licensing ...............................................13

            c.   Title II's Accommodation Requirements Go Well Beyond What Would Be Proportional to Preventing Unconstitutional Discrimination ............................................15

    B.   The SAC Should be Dismissed Pursuant to Federal Rule of Civil Procedure 12(b)(6) Because It Fails to State a Claim Upon Which Relief Can Be Granted ...............................................................17

        1.   Plaintiff Has Failed to State a Claim for Retaliation Under the ADA .....17

        2.   Brewer Has Still Failed to State a Claim for Coercion or Intimidation under the ADA ...............................................................20

        3.   The State Bar Defendants Cannot Be Sued for Compensatory or Punitive Damages ...............................................................20

V.    CONCLUSION ..................................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Cooper*
    589 U.S. 248 (2020) ...................................................................12, 13, 14, 15

*Alsbrook v. City of Maumelle*,
    184 F.3d 999 (8th Cir. 1999) ...............................................................15

*Alvarado v. Cajun Operating Co.*
    588 F.3d 1261 (9th Cir. 2009) .............................................................21

*Arizona Dream Act Coal. v. Brewer*,
    855 F.3d 957 (9th Cir. 2017) .................................................................8

*Armstrong v. Newsom*,
    2021 WL 933106 (N.D. Cal. March 11, 2021) ....................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................6, 9, 19

*Barnes v. Gorman*
    536 U.S. 181 (2002) ............................................................................20

*Bd. of Trustees of Univ. of Ala. v. Garrett*
    531 U.S. 356 (2001) .....................................................................passim

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .........................................................................6, 9

*Brown v. City of Tucson*,
    336 F.3d 1181 (9th Cir. 2003) .......................................................17, 20

*Byrd v. Maricopa Cnty. Sheriff's Dep't*
    629 F.3d 1135 (9th Cir. 2011) ...............................................................6

*Caldwell v. Del Toro*
    2022 WL 1719132 (W.D. Wash. May 27, 2022) ................................21

*Chapman v. Pier 1 Imports (U.S.) Inc.*
    631 F.3d 939 (9th Cir. 2011) .................................................................8

*City of Boerne v. Flores*
    521 U.S. 507 (1997) .......................................................................15, 16

*Clegg v. Cult Awareness Network*,
    18 F.3d 752 (9th Cir. 1994) ...................................................................6

*Cohen v. City of Culver City*,
    754 F.3d 690 (9th Cir. 2014) ...............................................................15

*Coleman v. Ct. of Appeals of Md.*
    566 U.S. 30 (2012) ..............................................................................12

*Demshki v. Monteith*
   255 F.3d 986 (9th Cir. 2001) ........................................................................7

*Drawsand v. F.F. Props., L.L.P.*
   866 F. Supp. 2d 1110 (N.D. Cal. Sept. 30, 2011) .......................................8

*Duvall v. County of Kitsap,*
   260 F.3d 1124 (9th Cir. 2001) ................................................................8, 18

*Esonwune v. Regents of Univ.y of California*
   2017 WL 4025209 (N.D. Cal. Sept. 13, 2017) ............................................8

*Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*,
   527 U.S. 627 (1999) ....................................................................................6

*Franceschi v. Schwartz,*
   57 F.3d 828 (9th Cir. 1995) ........................................................................6

*Gallagher v. San Diego Unified Port Dist.*
   14 F. Supp. 3d 1380 (S.D. Cal. 2014), *aff'd*, 668 F. App'x 786 (9th Cir. 2016) ............19

*Giannini v. Real,*
   911 F.2d 354 (9th Cir. 1990) ......................................................................11

*Goldfarb v. Va. State Bar,*
   421 U.S. 773 (1975) ..................................................................................16

*Guttman v. Khalsa*
   669 F.3d 1101 (10th Cir. 2012) ................................................11, 13, 14, 16

*Herrera v. Giampietro*
   2010 WL 1904827 (E.D. Cal. May 10, 2010) ..........................................21

*In re Rose*
   22 Cal. 4th 430 (2000) ................................................................................2

*Israel v. Carter*
   2022 WL 874941 (E.D. Cal. March 24, 2022) ..........................................20

*Jones v. City of Vallejo*
   2025 WL 318076 (E.D. Cal. Jan. 28, 2025) ............................................21

*Kelley v. Corr. Corp. of Am.*
   750 F. Supp. 2d 1132 (E.D. Cal. 2010) ....................................................21

*Kohn v. State Bar of Calif.*
   119 F.4th 693 (9th Cir. 2024) ..........................................................5, 7, 8, 9

*Kohn v. State Bar of Calif.*
   87 F.4th 1021 (9th Cir. 2024) ................................................................7, 16

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ....................................................................................6

*Leis v. Flynt,*
   439 U.S. 438 (1979) ..................................................................................16

-iii-

*Lovell v. Chandler*
   303 F.3d 1039 (9th Cir. 2002) ................................................................20

*Memmer v. Marin County Courts*
   169 F.3d 630 (9th Cir. 1999) ...........................................................8, 18

*Mlikotin v. City of Los Angeles*,
   643 F.2d 652 (9th Cir. 1981) ................................................................11

*Nichols v. Alabama State Bar*,
   No. 2:15-CV-179-WMA, 2015 WL 3823929 (N.D. Ala. June 19, 2015),
   *aff'd*, 815 F.3d 726 (11th Cir. 2016) ....................................................13

*Oliver v. Va. Bd. of Bar Exam'rs*
   312 F. Supp. 3d 515 (E.D. Va. 2018) .......................................10, 11, 13, 14

*Pardi v. Kaiser Found. Hosps.*,
   389 F.3d 840 (9th Cir. 2004) ................................................................17

*Pell v. Nuñez*
   99 F.4th 1128 (9th Cir. 2024) ..........................................................3, 10

*Reed v. Fox*
   2023 WL 6930802 (E.D. Cal. Oct. 19, 2023), *report and recommendation adopted*, 2024
   WL 1304961 (E.D. Cal. Mar. 27, 2024) ..................................................21

*Renner v. Supreme Ct. of Fla.*, 2022 WL 1658361 (11th Cir. May 25, 2022) ...........................13

*Roe v. Johnson*
   334 F. Supp. 2d 415 (S.D.N.Y. 2004) .......................................10, 13, 14

*Romero v. Garland*
   2024 WL 1099300 (S.D. Cal. Mar. 13, 2024) ..............................................21

*Sander v. State Bar of California*,
   58 Cal. 4th 300 (2013) ...........................................................................3

*Savage v. Glendale Union High Sch.*,
   343 F.3d 1036 (9th Cir. 2003) .................................................................6

*Schwarz v. Georgia Composite Med. Bd.*, 2020 WL 7773481 (N.D. Ga. Dec. 30, 2020),
   *aff'd*, No. 21-10288, 2021 WL 4519893 (11th Cir. Oct. 4, 2021) ...................................13

*Scott v. Breeland*,
   792 F.2d 925 (9th Cir. 1986) .................................................................6

*Strojnik v. State Bar of Arizona*
   446 F. Supp. 3d 566 (D. Ariz.), *aff'd*, 829 F. App'x 776 (9th Cir. 2020) ...............7, 11, 13

*T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*,
   806 F.3d 451 (9th Cir. 2015) ................................................................17

*T.W. v. N.Y. State Bd. of Law Exam'rs*
   110 F.4th 71 (2d Cir. 2024) ...........................................................passim

-iv-

*Tennessee v. Lane*
    541 U.S. 509 (2004) ................................................................................12

*Turner v. Nat'l Council of State Boards of Nursing, Inc.,*
    561 F. App'x 661 (10th Cir. 2014).........................................................13

*United States v. Georgia*
    546 U.S. 151 (2006) ...............................................................5, 7, 8, 12

*Vartanian v. State Bar of California*
    794 Fed.Appx. 597 (9th Cir. 2019) ..........................................................7

*Vasquez v. County of Los Angeles,*
    349 F.3d 634 (9th Cir. 2003) ..................................................................19

*Villiarimo v. Aloha Island Air, Inc.,*
    281 F.3d 1054 (9th Cir. 2002) ................................................................19

*Whitaker v. Tesla Motors, Inc.*
    985 F.3d 1173 (9th Cir. 2021) ..................................................................8

*Whittlestone, Inc. v. Handi-Craft Co.*
    618 F.3d 970 (9th Cir. 2010) ..................................................................21

*Yartzoff v. Thomas,*
    809 F.2d 1371 (9th Cir. 1987) ................................................................19

*Zimmerman v. Oregon Dep't of Just.,*
    170 F.3d 1169 (9th Cir. 1999) ..................................................................7

**Statutes**

42 U.S.C. § 12189 ................................................................................................14

42 U.S.C. §§ 2000e–2000e17 ............................................................................17

Cal Bus. & Prof. Code § 6046 .........................................................................2, 3

Cal. Bus. & Prof. Code § 6001 ...........................................................................2

Cal. Bus. & Prof. Code § 6060 ...........................................................................2

Cal. Bus. & Prof. Code § 6066 ...........................................................................3

**Rules**

Cal. R. Ct., rule 9.6 ..............................................................................................3

Cal. Rules of Court, rule 9.13(d) .........................................................................3

Rules of the State Bar of Cal., rule 4.85 .............................................................3

Rules of the State Bar of Cal., rule 4.88 .............................................................3

Rules of the State Bar of Cal., rule 4.90 .............................................................3

-v-

Rules of the State Bar of Cal., rules 4.80-4.92. ....................................................................3

**Other Authorities**

Amanda M. Foster, *Reasonable Accommodations on the Bar Exam: Leveling the Playing Field or Providing an Unfair Advantage?*,
    48 Val. U. L. Rev. 661, 675–76 (2014) ...............................................................15

H.R. Conf. Rep. No. 101-558 (1990) ....................................................................14

H.R. Conf. Rep. No. 101-596 (1990) ....................................................................14

H.R. Rep. No. 101-485 pts. 1, 2, 3 & 4 (1990) .....................................................14

Michael K. McKinney, *The Impact of the Americans with Disabilities Act on the Bar Examination Process: The Applicability of Title II and Title III to the Learning Disabled*,
    26 Cumb. L. Rev. 669, 687 (1996)......................................................................15

S. Rep. 101-116 (1990) ........................................................................................14

**Regulations**

28 C.F.R. § 36.309 ...............................................................................................14

**Constitutional Provisions**

Cal. Const., art. VI, § 9........................................................................................2

Motion to Dismiss                                                    Case No. 2:23-cv-00860-TLN-JDP

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiff Terrence Brewer is an applicant for admission to practice law in California who has failed the California Bar Examination three times. In summary, Plaintiff alleges that he is a disabled veteran who requested unspecified testing accommodations on the essay portion of the exam and received some unspecified accommodations, but not the ones he wanted. Plaintiff alleges that he wrote passing-quality essays, but received failing scores due to what he assumes was a clerical error given his certainty that he passed, and that the State Bar is somehow "retaliating" against him by refusing to regrade his examinations. Plaintiff asks this Court to order him admitted to practice law in California.

This Court previously granted in part and denied in part the State Bar Defendants' motion to dismiss Plaintiff's First Amended Complaint.[1] *See* Dkts. 25, 29. On appeal, the Ninth Circuit reversed the partial denial and remanded for a claim-by-claim evaluation of whether, in enacting the Americans with Disabilities Act ("ADA"), Congress validly abrogated sovereign immunity as to Plaintiff's Title V claims. Dkt. 46. Plaintiff was also granted leave to amend his ADA claims. Dkt. Nos. 48, 51. Plaintiff has chosen to rest on the Second Amended Complaint ("SAC") he filed while the appeal was pending. Dkt. 36, 52.

This Court should dismiss both of Plaintiff's ADA claims. First, both claims are barred by the Eleventh Amendment. Applying the required claim-specific analysis, this Court should find that Plaintiff has not stated a valid Title II claim, a prerequisite to bringing suit under Title V. Even if he had, every court to address the question has held that Title II of the ADA does not validly abrogate Eleventh Amendment immunity in the professional licensing context. Because immunity applies to the alleged underlying Title II claim, it also applies to any derivative Title V claim.

Second, irrespective of immunity, Plaintiff does not state a claim under the ADA. He fails to allege sufficient *facts* (not conclusions) to state a claim under the ADA for retaliation, as

---

[1] The State Bar Defendants are the State Bar of California, Board of Trustees, and Committee of Bar Examiners.

1  he alleges no causal connection between his purported protected activity and any adverse action.

2  Indeed, his theory is that he *did* pass the Bar Exam but somehow anonymous graders across

3  three exams all mistakenly graded his essays. Nor does he plausibly allege that the State Bar

4  Defendants threatened him or that any threat had a nexus to his exercise or enjoyment of any

5  right protected by the ADA sufficient to state an ADA claim for coercion. Finally, there is no

6  legal basis for Plaintiff's request for punitive damages. For these reasons, Plaintiff fails to state

7  claims upon which relief can be granted, and his claims should be dismissed without leave to

8  amend.

9  **II.    STATEMENT OF FACTS**

10     **A.    The State Bar of California Is the Administrative Arm of the California
           Supreme Court in Matters of Attorney Licensing.**

12         The State Bar is a public corporation established by the California State Constitution; it

13  operates as the administrative arm of the California Supreme Court in attorney licensing,

14  discipline, and regulation. *See* Cal. Const., art. VI, § 9; Cal. Bus. & Prof. Code § 6001; *In re*

15  *Rose*, 22 Cal. 4th 430, 438 (2000). The State Bar administers the California Bar Exam, which

16  applicants must pass to become licensed attorneys in California. Cal. Bus. & Prof. Code §

17  6060(g). The Committee of Bar Examiners ("Committee") is established by the State Bar's

18  Board of Trustees to "examine all applicants," "administer the requirements for admission," and

19  "certify to the Supreme Court for admission" applicants who fulfill those requirements.[2] Cal.

20  Bus. & Prof. Code § 6046.

21     **B.    The State Bar Testing Accommodation Process**

22         Under the State Bar's rules, applicants with mental and/or physical impairments that

23  limit their ability to demonstrate their knowledge, skill, and ability under standard testing

24  conditions are granted reasonable testing accommodations for the Bar Exam. Rules of the State

---

[2] The caption to the SAC lists the State Bar's governing board, the Board of Trustees, as a defendant. However, none of the allegations in the SAC refer to the Board of Trustees or state any claim against it. *See generally* SAC. To the extent Plaintiff intends to have sued the Board of Trustees on his claims despite not saying so, out of an abundance of caution, this motion's reference to the State Bar Defendants includes the Board of Trustees.

-2-

Bar of California 4.80–4.92.[3] To seek accommodations, prospective exam-takers must complete an initial petition. *Id.*, rule 4.85. Once the State Bar reviews the petition, the applicant is informed whether the request is granted, partially granted, denied, or whether additional information is necessary. *Id.*, rule 4.88. If the State Bar does not grant all requested accommodations, the applicant may seek review by the Committee. *Id.*, rule 4.90. If an applicant requests review, the State Bar's Director of Admissions may grant the accommodations requested. *Id.*, rule 4.90(C). Otherwise, the Committee considers the request and may review any requested accommodations denied by staff and either affirm that denial or grant the accommodations. *Id.*, rule 4.90(D).

### C.     Bar Exam Grading Process

Pursuant to Business and Professions Code section 6046, the Committee examines applicants for admission to practice law. Cal. Bus. & Prof. Code § 6046. The Committee determines the format, scope, topics, content, questions, and grading process for the Bar Exam. Cal. Rule of Court, rule 9.6(a). The California Supreme Court sets the passing score for the exam. Cal. Rule of Court, rule 9.6(b). Answers are graded anonymously. *See* www.calbar.ca.gov/Admissions/Examinations/Exam-Rules ("answers are identified by code number only; nothing about an individual applicant is known to the Graders."). "Any person refused certification to the Supreme Court for admission to practice" may challenge that refusal by petitioning the Supreme Court for admission. Cal. Bus. & Prof. Code § 6066; Cal. Rules of Court, rule 9.13(d). Ultimately, it is the California Supreme Court—not the State Bar—that admits or declines to admit applicants to the practice of law in California. *Pell v. Nuñez*, 99 F.4th 1128, 1131–33 (9th Cir. 2024); *Sander v. State Bar of California*, 58 Cal. 4th 300, 305 (2013) ("This court has the sole authority to grant or deny admission to practice law. . . .").

### D.     Plaintiff's Attempts to Pass the Bar Exam and the Filing of This Lawsuit

Plaintiff alleges that he is a "disabled veteran with a disability rating of 100 percent" from the Veterans Administration. SAC ¶¶ 1, 11. His complaint provides no information about

---

[3] Title 4 of the State Bar Rules is available at: https://www.calbar.ca.gov/Portals/0/ documents/rules/Rules_Title4_Div1-Adm-Prac-Law.pdf (last accessed Apr. 1, 2025).

1   the nature of his disability. *See* SAC pp. 1–21. Plaintiff alleges that in November 2020 he

2   requested testing accommodations to take the essay and performance test portions of

3   California's July 2021 Bar Exam. *Id.* ¶¶ 13, 43, 67. He does not provide any information about

4   what accommodations he requested or how they relate to his disability or provide him with an

5   equal opportunity to answer essay questions. *Id.* ¶¶ 13, 43, 67. He alleges that the State Bar

6   denied his accommodations without explanation. *Id.* ¶¶ 14, 44, 70. Plaintiff sought review, and

7   alleges he also complained to the U.S. Department of Justice and a member of the California

8   State Assembly, after which the State Bar "reluctantly granted partial, minimalistic and

9   inadequate accommodations . . . while unjustly denying other material accommodations that are

10  outcome determinative." *Id.* ¶¶ 15–16, 45–47, 72–74. Other than these wholly conclusory

11  statements, Plaintiff does not allege what accommodations were provided, what requested

12  accommodations were denied, or how denial of those accommodations impacted his taking of

13  the Bar Exam. *Id.* ¶¶ 13–16, 43–47, 67–74.

14       Plaintiff did not pass the July 2021 Bar Exam. He alleges his score was "five points

15  below passing" and that his request for reconsideration of his score was denied. *Id.* ¶¶ 17–18.

16  Plaintiff attempted the Bar Exam twice more in July 2022 and February 2023, but did not pass

17  those exams either. *Id.* ¶¶ 19–20. He asserts the same general, conclusory allegations about

18  being denied accommodations while providing no details about the nature of his disability, what

19  accommodations were requested but denied, or how the purported denial of accommodations

20  impacted his test taking. *Id*. Plaintiff alleges that he hired an "expert tutor" for his third attempt

21  at the Bar Exam but failed again. *Id.* ¶¶ 21–23. His requests for regrading were denied by the

22  State Bar. *Id.* ¶¶ 26–27. He complains that the State Bar does not explain "what documented

23  evidence of a clerical error is required" to obtain regrading.[4] *Id.* ¶ 28.

24       Plaintiff alleges that he did well on the multiple-choice portion of the exam, and

25  therefore his scores on the essay portions "must be" the result of a clerical or arithmetical error.

---

26  [4] The State Bar does not regrade exams for applicants simply because they believe their answers
    deserve passing grades. The State Bar's regrading policy only allows the exam scores to be
27  reconsidered "when an applicant establishes with documented evidence that a clerical error
    resulted in failure or prevented the exam from being properly graded."
28  www.calbar.ca.gov/Admissions/Examinations/California-Bar-Examination/Grading.

*Id.* ¶¶ 21–35. Notably, Plaintiff does not allege any facts about how this purported mis-grading of his essays by different graders across three exams has anything to do with his disability or the accommodations he wanted but was purportedly not provided. *Id.* ¶¶ 21–35.

Plaintiff then alleges that he asked the State Bar for information about its grading policies and the grading of his exam, which was denied. *Id.* ¶¶ 36–37. He also alleges that he was informed in 2023 by the Assistant Director of Admissions Amy Nunez that his exam score would not be reconsidered "due to [his] disability and his complaint submitted to the DOJ". *Id.* ¶ 38. He makes no allegation about any such purported communication with respect to the 2021 or 2022 exams. *See generally* SAC.

Plaintiff alleges that the State Bar Defendants retaliated against him and interfered with his rights under the ADA by refusing to regrade the essay portions of his exams. He insists, essentially, that he must have passed and that his repeated failing grades on the essay portions of the exam "def[y] all common sense." *Id.* ¶ 57. He believes he "objectively" passed but was repeatedly mistakenly scored as failing. *Id.* ¶¶ 60–63. He alleges that the State Bar is "deliberately concealing the truth as to whether Plaintiff was unfairly graded or Defendants made some sort of clerical and/or arithmetical error." *Id.* ¶ 64 (capitalization omitted).

On May 9, 2023, Plaintiff filed this action against the State Bar Defendants and filed his First Amended Complaint on June 8, 2023. Dkts. 1, 4. The Court partially granted and partially denied the State Bar Defendants' motion to dismiss, including on immunity grounds, and the State Bar appealed. Dkts. 14, 25, 29, 30. On January 15, 2025, the Ninth Circuit remanded, clarifying that Eleventh Amendment immunity must be considered on a "claim-by-claim basis" as to the "specific class of conduct at issue" under *Kohn v. State Bar of Calif.*, 119 F.4th 693 (9th Cir. 2024) ("*Kohn II*"), *petition for cert. filed*, No. 24-6921 (U.S. Mar. 31, 2025), and *United States v. Georgia*, 546 U.S. 151 (2006). Dkt. 46. Although given an opportunity to amend again (Dkts. 48, 51), Plaintiff has elected to proceed on the SAC he filed while the appeal was pending. Dkts. 36, 52.

///

///

III.    **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(1) tests the Court's subject matter jurisdiction. *See, e.g., Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039–40 (9th Cir. 2003). When subject matter jurisdiction is challenged, "the party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists[.]" *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). Accordingly, in response to a Rule 12(b)(1) motion to dismiss, the court will presume lack of subject matter jurisdiction until the plaintiff proves otherwise. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 376–78 (1994).

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); that is, the plaintiff must allege facts that consist of more than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must also allege more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Instead, the plaintiff must allege *facts* sufficient to "raise a right to relief above the speculative level." *Id*. The "court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994). That Plaintiff is appearing pro se does not lessen his need to plead facts instead of conclusions. *See Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1140 (9th Cir. 2011) (en banc).

IV.    **ARGUMENT**

    A.    **The Complaint Should Be Dismissed Without Leave to Amend Under Rule 12(b)(1) and 12(b)(6) Because the Eleventh Amendment Bars Plaintiff's Claims**

The Eleventh Amendment to the United States Constitution bars suits against a state from being brought in federal court absent a waiver of sovereign immunity. *See Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 634–35 (1999). The Eleventh Amendment's bar extends to "an arm of the state, its instrumentalities, or its agencies." *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995). The State Bar Defendants are arms of

1    the state protected by the Eleventh Amendment. *Kohn v. State Bar of Calif.*, 87 F.4th 1021,

2    1023 (9th Cir. 2024) (en banc) ("*Kohn I*").

3    Plaintiff's claims are purportedly brought under Title V of the ADA. "Title V is

4    contingent upon the substantive violations of other provisions of the ADA." *Strojnik v. State*

5    *Bar of Arizona*, 446 F. Supp. 3d 566, 575 (D. Ariz.), *aff'd*, 829 F. App'x 776 (9th Cir. 2020). A

6    Title V retaliation claim may be brought in federal court only where Eleventh Amendment

7    immunity has been validly abrogated for the underlying Title I or II claim. *Demshki v. Monteith*,

8    255 F.3d 986, 988–89 (9th Cir. 2001) (Title V claim based on rights under Title I was subject to

9    immunity); *see also Vartanian v. State Bar of California,* 794 Fed.Appx. 597, 600 (9th Cir.

10   2019) (Title V claim based on rights under Title II was subject to immunity where claim did not

11   involve the right of access to the courts). Title II covers claims against public entities like the

12   State Bar Defendants. *See Zimmerman v. Oregon Dep't of Just.*, 170 F.3d 1169, 1172 (9th Cir.

13   1999) (describing the structure of the ADA).

14   As explained in *Kohn II*, whether Plaintiff's Title V claims are barred by immunity turns

15   on whether Title II of the ADA validly abrogates the Eleventh Amendment. *Kohn II*, 119 F.4th

16   at 695, 699–700. To determine that, the Court must engage in the three-part inquiry established

17   by *Georgia*, 546 U.S. at 159: (1) whether a Title II violation is alleged, (2) if so, whether the

18   alleged conduct at issue actually violates the Fourteenth Amendment, and, if not, (3) whether

19   the alleged conduct at issue falls within the scope of Congress's prophylactic power under

20   section 5 of the Fourteenth Amendment. *Kohn II*, 119 F.4th at 697, 699–700. "The prophylactic

21   abrogation analysis is fact-intensive, requiring a review of whether there is 'congruence and

22   proportionality between the injury to be prevented or remedied and the means adopted to that

23   end.'" *Id*. at 699. Here, applying the *Georgia* test demonstrates that the State Bar Defendants'

24   immunity has not been validly abrogated by Congress. *See T.W. v. N.Y. State Bd. of Law*

25   *Exam'rs*, 110 F.4th 71 (2d Cir. 2024), *petition for cert. filed*, No. 24-714 (U.S. Jan. 3, 2025)

26   (Title II does not validly abrogate Eleventh Amendment immunity in the context of Bar Exam

27   testing accommodations).

28   *///*

1      1.    **First *Georgia* Factor: Plaintiff Has Not Alleged a Violation of Title II**

The first *Georgia* step is to determine "which aspects of the State's alleged conduct violated Title II." *Georgia*, 546 U.S. at 159. If no Title II claim is stated, the court does not need to address the remaining factors. *Kohn II*, 119 F.4th at 699 ("[I]f a plaintiff fails to state a claim under Title II, dismissal is appropriate" without applying the remainder of the *Georgia* test). Starting with this threshold inquiry is consistent with the longstanding doctrine of constitutional avoidance. *Arizona Dream Act Coal. v. Brewer*, 855 F.3d 957, 963 (9th Cir. 2017) (court should avoid constitutional issue "so long as there is a viable alternate, nonconstitutional ground to reach the same result.").

"To prove that a public program or service violated Title II of the ADA, a plaintiff must show: (1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001). Where the plaintiff alleges that he was denied requested accommodations, he must also show "the existence of specific reasonable accommodations that [the defendant] failed to provide." *Memmer v. Marin County Courts*, 169 F.3d 630, 633 (9th Cir. 1999); *see also Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176–77 (9th Cir. 2021); *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 955 (9th Cir. 2011); *Duvall*, 260 F.3d at 1137; *Esonwune v. Regents of Univ.y of California*, 2017 WL 4025209, at *4 (N.D. Cal. Sept. 13, 2017).

Plaintiff's SAC offers little beyond conclusions. Plaintiff states that he is disabled but alleges no facts as to how or why his disability impacts his ability to take the Bar Exam. SAC ¶¶ 11–39; *Drawsand v. F.F. Props., L.L.P.*, 866 F. Supp. 2d 1110, 1119 (N.D. Cal. Sept. 30, 2011) (no ADA claim properly alleged where plaintiff provided no details regarding her disability and instead made "the conclusory assertion that she 'is a disabled veteran'"). Plaintiff further alleges that he requested testing accommodations but does not say what he requested. SAC ¶¶ 13, 19–20. Instead, he alleges the State Bar only gave him "partial, minimalistic, and

-8-

1   inadequate accommodations" but does not say what those accommodations were. *Id.* ¶¶ 15, 19–

2   20. Finally, Plaintiff provides no explanation for why the accommodations he received were

3   insufficient, let alone that there were specific reasonable accommodations that the State Bar did

4   not provide. *Id.* ¶¶ 11–39. Indeed, Brewer does not even allege the lack of additional

5   accommodations was the reason he did not pass the exam. SAC pp. 1–21. To the contrary, his

6   allegation seems to be that he *did* write answers that pass the exam, but that his essays (across

7   three different exams) were mis-graded or his scores incorrectly added. *Id.* ¶¶ 23–38. He offers

8   no explanation of what that has to do with his disability or testing accommodations he did not

9   receive.[5] *Id.*

10          These threadbare allegations are fatal to his ADA claims, as Plaintiff's entirely cursory

11  allegations do not come close to alleging *facts* that *plausibly* show that Plaintiff was deprived

12  access to the Bar Exam *by reason of* his disability, much less that he was denied specific

13  reasonable accommodations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Plaintiff's

14  self-serving assertion that scoring well on the multiple-choice portion of the Bar Exam

15  necessarily means he must have scored well on the essays,[6] so that his repeated failure to pass

16  must be the fault of the graders not his own, has no theoretical, much less plausible, connection

17  to whether he is disabled or what accommodations he was provided or denied. *See generally*

18  SAC. His true complaint seems to be that the State Bar applied its standard policy and declined

19  to re-grade his examinations when he complained that he should have passed—a grievance that

20  has nothing to do with his disability or any test taking accommodations.

21          Because Plaintiff's claim fails at step one of the *Georgia* analysis, there is no reason to

22  analyze the remaining two steps and his claim should be dismissed. *Kohn II*, 119 F.4th at 699.

23  Yet even if his cursory allegations stated a plausible claim, they do not satisfy either step two or

24

25  _____
    [5] As noted above, the Bar Exam is graded anonymously, so graders do not know anything about
26  a particular applicant's disability or identity.
    [6] Plaintiff alleges that because he purportedly performed well on the multiple-choice portion of
27  the Bar Exam, he must have necessarily performed well on the essay portion. However,
    Plaintiff's contention that his poor performance on the essay portion *must* be due to an ADA
28  violation rather than a different cause—such as his scores being an accurate reflection of his
    performance on the Bar Exam—is pure speculation. *See Twombly*, 550 U.S. at 555 (a plaintiff
    must allege facts sufficient to "raise a right to relief above the speculative level").

1    three of the *Georgia* analysis and thus cannot result in a valid abrogation of the State Bar

2    Defendants' Eleventh Amendment immunity.

3              **2.     Second *Georgia* Factor: Plaintiff Does Not Allege a Violation of the**
                        **Fourteenth Amendment**
4

5              As to the second *Georgia* factor, Plaintiff's allegations do not demonstrate any actual

6    violation of the Fourteenth Amendment.

7              First, as a matter of law, Plaintiff cannot state a claim for constitutional deprivation of

8    rights or property because he does not allege that he petitioned the California Supreme Court to

9    admit him despite his failing bar scores. *Pell*, 99 F.4th at 1128. The State Bar Defendants'

10   actions with respect to admission do not themselves "result in a cognizable deprivation of

11   rights." *Id.* at 1131–33. "[T]he [California Supreme Court] has exclusive authority to admit an

12   applicant regardless of the State Bar's refusal to certify him or her. On this basis, we have held

13   that the State Bar's refusal to certify an applicant does not deprive an applicant of any rights

14   until the supreme court expressly or impliedly approves the State Bar's refusal so as to have the

15   effect of a denial of admission." *Id.* at 1132 (cleaned up). A challenge to part of the admissions

16   process "must be brought by original petition to the California Supreme Court." *Id.* at 1133. In

17   the absence of such a petition, there is no deprivation of constitutionally protected rights or

18   property. *Id.* Here, Plaintiff does not allege that he made any petition to the California Supreme

19   Court to admit him despite his failing bar scores (because he did not). *See generally* SAC.

20   Under *Pell*, that failure prevents Plaintiff from stating a constitutional violation as a matter of

21   law.

22             Second, even if Plaintiff had unsuccessfully petitioned the California Supreme Court for

23   admission, his allegations would still show no constitutional violation. Plaintiff's cursory

24   pleadings do not actually allege any constitutional violations. SAC pp. 1–21. However, the

25   constitutional theories discussed—and rejected—in similar bar exam cases are equal protection,

26   the purported right to practice a profession, and the right of access to courts. *See T.W.*, 110 F.4th

27   at 82–85; *Oliver v. Va. Bd. of Bar Exam'rs*, 312 F. Supp. 3d 515, 529 (E.D. Va. 2018); *Roe v.*

28   *Johnson*, 334 F. Supp. 2d 415, 422–23 (S.D.N.Y. 2004). None of these theories are applicable

here.

Plaintiff has not alleged an equal protection violation because there is no constitutional obligation to grant testing accommodations to the disabled. "States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions towards such individuals are rational." *Garrett*, 531 U.S. at 366. Even if Plaintiff had been given *no* accommodations, being treated the same as others is not an equal protection violation. *See Mlikotin v. City of Los Angeles*, 643 F.2d 652, 654 (9th Cir. 1981) ("unequal treatment of persons similarly situated . . . [is] the gravamen of a complaint for denial of equal protection.") "If special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause." *Garrett*, 531 U.S. at 368; *see Oliver*, 312 F. Supp. 3d at 529 (Title II claim for bar exam testing accommodations did not constitute an equal protection violation); *T.W.*, 110 F.4th at 84–85.

Nor does Plaintiff have any constitutional right to be licensed as an attorney. "[T]here is no fundamental right to practice law or to take the bar examination." *Giannini v. Real*, 911 F.2d 354, 358 (9th Cir. 1990); *Oliver*, 312 F. Supp. 3d at 529–30 (same).

Finally, the right of access to the courts addressed in *Lane* does not provide anyone with the right to practice law or represent clients. *Strojnik*, 446 F. Supp. at 575–76.

Simply put, "the area of professional licensing does not implicate a traditional category of fundamental rights." *Guttman v. Khalsa*, 669 F.3d 1101, 1123 (10th Cir. 2012) (Title II does not validly abrogate Eleventh Amendment immunity against professional licensing claims). Nothing Plaintiff alleges constitutes an actual violation of the Fourteenth Amendment.

Accordingly, Plaintiff's claims do not satisfy step two of the *Georgia* analysis.

### 3.    Third *Georgia* Factor: Congress' Prophylactic Power Under Section 5 Does Not Extend to the Professional Licensing Context

Because Plaintiff's claim does not allege conduct that actually violates the Fourteenth Amendment, Title II can only abrogate the State Bar Defendants' Eleventh Amendment immunity in this case if Plaintiff's claim falls within the appropriate scope of Congress's prophylactic power to prohibit constitutional conduct as a way of preventing unconstitutional

conduct. *Georgia*, 546 U.S. at 159. "For an abrogation statute to be 'appropriate' under Section 5, it must be tailored to 'remedy or prevent' conduct infringing the Fourteenth Amendment's substantive prohibitions." *Allen v. Cooper*, 589 U.S. 248, 260 (2020).

"Congress cannot use its power to enforce the Fourteenth Amendment to alter what that Amendment bars. That means a congressional abrogation is valid under Section 5 only if it sufficiently connects to conduct courts have held Section 1 to proscribe." *Id.* (cleaned up). The Court applies a "means-end test": "[t]here must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *Id.* at 260–61. In other words, "[t]o ensure Congress' enforcement powers under § 5 remain enforcement powers . . . rather than powers to redefine the substantive scope of § 1, Congress must tailor legislation enacted under § 5 to remedy or prevent conduct transgressing the Fourteenth Amendment's substantive provisions." *Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30, 36 (2012) (cleaned up).

This "mean-end" analysis involves basically three elements: (1) the level of granularity to be applied in determining the constitutional harm at issue, (2) review of the Congressional record to determine "the evidence Congress had before it of a constitutional wrong," and (3) "how far, and for what reasons, Congress has gone beyond redressing actual constitutional violations." *Allen*, 589 U.S. at 261.

### a.     The Relevant Level of Inquiry Is Professional Licensing

To determine whether regulation of constitutional conduct is within the scope of Congress's prophylactic power under Section 5 of the Fourteenth Amendment, the Court must first determine "the metes and bounds of the constitutional right in question." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 368 (2001). That inquiry cannot be based on "Title II, with its wide variety of applications, as an undifferentiated whole." *Tennessee v. Lane*, 541 U.S. 509, 530–31 (2004); *see Coleman*, 566 U.S. at 36–37 (family care provisions of FMLA were sufficiently connected to history of unconstitutional sex-discrimination to abrogate the Eleventh Amendment, but self-care provisions of the FMLA were not). Here, the relevant area of state action is professional licensing.

The "metes and bounds" of professional licensing have been consistently analyzed by

cases considering whether Title II abrogates Eleventh Amendment immunity against federal court claims involving licensing or regulation of professions. All of those cases find that the Eleventh Amendment immunity is *not* abrogated in this context. *T.W.*, 110 F.4th at 91; *Guttman v. Khalsa*, 669 F.3d 1101, 1123–24 (10th Cir. 2012); *Strojnik*, 446 F. Supp. 3d at 575–76, *aff'd* 829 F. App'x 776 (9th Cir.) (Title II does not abrogate Eleventh Amendment immunity to retaliation claim concerning state bar discipline); *Renner v. Supreme Ct. of Fla.*, No. 19-14981, 2022 WL 1658361, at *5–7 (11th Cir. May 25, 2022) (Title II does not abrogate Eleventh Amendment immunity to challenge regarding conditions of bar admission); *Schwarz v. Georgia Composite Med. Bd.*, No. 1:18-CV-1142-MLB, 2020 WL 7773481, at *3 (N.D. Ga. Dec. 30, 2020), *aff'd*, No. 21-10288, 2021 WL 4519893 (11th Cir. Oct. 4, 2021) (Title II does not abrogate Eleventh Amendment immunity as to state medical licensing); *Nichols v. Ala. State Bar*, No. 2:15-CV-179-WMA, 2015 WL 3823929, at *5 (N.D. Ala. June 19, 2015), *aff'd*, 815 F.3d 726 (11th Cir. 2016) (Title II does not abrogate Eleventh Amendment immunity as to state regulation of attorney conduct); *Turner v. Nat'l Council of State Bds. of Nursing, Inc.*, 561 F. App'x 661, 668 (10th Cir. 2014) (Title II does not abrogate Eleventh Amendment immunity as to denial of accommodations on nursing licensing exam); *Oliver*, 312 F. Supp. 3d at 527–35 (Title II does not abrogate Eleventh Amendment as to bar exam accommodations claim); *Roe*, 334 F. Supp. 2d at 422–23 (same).

**b.    The Congressional Record Contains No Evidence of a Pattern of Unconstitutional Discrimination by States Concerning Professional Licensing**

"For an abrogation statute to be 'appropriate' under Section 5, it must be tailored to 'remedy or prevent' conduct infringing the Fourteenth Amendment's substantive prohibitions." *Allen*, 589 U.S. at 260. "[A] congressional abrogation is valid under Section 5 only if it sufficiently connects to conduct courts have held Section 1 to proscribe." *Id.* That analysis requires "a history and pattern of unconstitutional [ ] discrimination by the States against the disabled." *Garrett*, 531 U.S. at 368. Courts look to the legislative history of a statute to determine whether it was directed at such a history and pattern. *Allen*, 589 U.S. at 261 ("[C]ourts are to consider the constitutional problem Congress faced—both the nature and the

1   extent of state conduct violating the Fourteenth Amendment. That assessment usually (though

2   not inevitably) focuses on the legislative record, which shows the evidence Congress had before

3   it of a constitutional wrong.").

4          Here, "nothing in the congressional record suggests Title II was a response to pervasive

5   discrimination in the area of professional licensing." *Guttman*, 669 F.3d at 1124. That legislative

6   history is found at S. Rep. 101-116 (1990), H.R. Conf. Rep. No. 101-596 (1990), H.R. Conf.

7   Rep. No. 101-558 (1990), and H.R. Rep. No. 101-485 pts. 1, 2, 3 & 4 (1990). There is no

8   reference in that history to state discrimination against the disabled in professional licensing.

9   Indeed, the only reference to professional licensing is a single report with regard to Title III—

10  governing public accommodations by private entities—noting that the ADA would require

11  testing accommodations, "which includes physical access as well as accommodations in the way

12  the test is administered, e.g. extended time or assistance of a reader." H.R. Rep. 101-485, 69

13  (1990), 1990 U.S.C.C.A.N. 445, 492; *see* 42 U.S.C. § 12189; 28 C.F.R. § 36.309. Section 309

14  of Title III was enacted to cover the circumstance where such tests are administered by *private*

15  parties. The report does not contain any discussion of any history of discrimination in such

16  examinations that led Congress to enact this provision.

17         Nothing else in the legislative history of the ADA discusses bar examinations or other

18  professional licensing, much less a history of irrational state discrimination with respect to the

19  same. *See T.W.*, 110 F.4th at 85–87; *Oliver*, 312 F. Supp. 3d at 530–31; *Roe*, 334 F. Supp. 2d at

20  422–23. The absence of such a history compels the conclusion that Congress was not legislating

21  against a backdrop of unconstitutional state discrimination against the disabled in professional

22  licensing exams. *See Renner*, 2022 WL 1658361, at *6. The United States Supreme Court

23  reached a similar conclusion with respect to government employment, noting the near absence

24  of evidence in the Congressional record of state discrimination in employment against the

25  disabled. *Garrett*, 531 U.S. at 370; *see also Allen*, 589 U.S. at 266 (holding purported

26  abrogation of sovereign immunity in Copyright Remedy Clarification Act failed the congruence

27  and proportionality test where the evidence of constitutional injury in the legislative record was

28  "exceedingly slight").

-14-

1     **c.     Title II's Accommodation Requirements Go Well Beyond**
      **What Would Be Proportional to Preventing**
2     **Unconstitutional Discrimination**

3         In addition, even assuming there were some Congressional knowledge of a history of

4     unconstitutional discrimination in professional licensing not reflected in the Congressional

5     record, Title II's broad sweep is not a congruent and proportional response. "[W]hat Congress

6     has done must be in keeping with the Fourteenth Amendment rules it has the power to

7     'enforce.'" *Allen*, 589 U.S. at 261. Congress cannot validly abrogate the Eleventh Amendment

8     to create new rights rather than enforce those already created by the Fourteenth Amendment.

9     *City of Boerne v. Flores*, 521 U.S. 507, 519 (1997).

10         The substantive provisions of Title II require "that public entities make reasonable

11    modifications to their programs and services to accommodate disabled persons." *Cohen v. City*

12    *of Culver City*, 754 F.3d 690, 696 (9th Cir. 2014). For example, it is common for disabled

13    applicants (like Brewer alleges he is) to request significant additional time to take a timed

14    examination, a private room, and for the State Bar to provide special equipment for the test taker

15    to use. Indeed, some commentators have taken a very broad view of the type of

16    accommodations that the ADA requires be provided to test takers with physical, mental, or

17    learning disabilities. *See* Amanda M. Foster, *Reasonable Accommodations on the Bar Exam:*

18    *Leveling the Playing Field or Providing an Unfair Advantage?*, 48 Val. U. L. Rev. 661, 675–76

19    (2014); Michael K. McKinney, *The Impact of the Americans with Disabilities Act on the Bar*

20    *Examination Process: The Applicability of Title II and Title III to the Learning Disabled*, 26

21    Cumb. L. Rev. 669, 687 (1996).

22         The Fourteenth Amendment, however, *does not* require that the State provide the

23    disabled with *any* special accommodations. *See Garrett*, 531 U.S. at 366. Just as they do with

24    respect to Title I, any such Title II requirements go well beyond prophylactically preventing

25    unconstitutional discrimination, even assuming Congress had a documented history of such in

26    this context. *See id.* at 372–74; *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1010 (8th Cir.

27    1999) (holding that "it cannot be said that in applying Title II of the ADA to the states, Congress

28    has acted to enforce equal protection guarantees for the disabled as they have been defined by

-15-

the Supreme Court" and finding no valid abrogation in Title II case challenging visual acuity exam for law enforcement certification).

Abrogation of the Eleventh Amendment is particularly problematic in this context given the states' historical power to regulate the practice of law. "Since the founding of the Republic, the licensing and regulation of lawyers has been left exclusively to the States . . . ." *Leis v. Flynt*, 439 U.S. 438, 442 (1979). "The interest of the states in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice." *Kohn I*, 87 F.4th at 1033 (quoting *Goldfarb v. Va. State Bar*, 421 U.S. 773, 792 (1975)). As the Second Circuit found in *T.W.*, in the professional licensing context, the broad provisions of the ADA are not congruent and proportional and thus exceed the scope of Congressional prophylactic power under section 5 of the Fourteenth Amendment. *T.W.*, 110 F.4th at 87–91.

Abrogating the Eleventh Amendment for claims involving professional licensing, and in particular the licensing of attorneys, thus fails every requirement for a prophylactic application of Section 5 of the Fourteenth Amendment. As the Tenth Circuit held in *Guttman* in the similar context of medical licensing:

> Ultimately, we are presented with a right that is not fundamental, very little evidence of a widespread pattern of irrational state discrimination in professional licensing, and a wide-reaching statute that inhibits a state's ability to safely and efficiently make professional licensing decisions. Title II prohibits a significant range of state action in this realm that would easily survive rational basis review. Accordingly, in this instance, Title II is "so out of proportion to a supposed remedial or preventive object that it cannot be understood as responsive to, or designed to prevent, unconstitutional behavior."

*Guttman*, 669 F.3d at 1123–24 (quoting *City of Boerne*, 521 U.S. at 532).

This case well illustrates how federal lawsuits under Title II could inhibit the state's traditional control of the practice of law. Plaintiff alleges that he is in some way disabled and was denied some type of accommodation, although he offers no explanation of what he wanted or why it would be necessary to comply with the ADA, much less the Fourteenth Amendment. And Plaintiff's substantive theory seems to be that because he allegedly performed well on the multiple-choice portion of the Bar Exam, the only possible explanation for his failure to write passing essay exams on three separate bar exams is some kind of grading or math error. He asks

this Court to provisionally license him to practice law in California and to order the Office of the U.S. Attorney General to independently re-grade all of his failed exams to see if he should have been given a passing score (*see* SAC, Prayer for Relief)—relief this Court lacks any authority to grant. Plaintiff's claims have no connection whatsoever to the type of unconstitutional conduct Congress's section 5 power is designed to prevent.

*     *     *

Plaintiff's claims thus fail all three steps of the *Georgia* analysis. Accordingly, the Court should find that Plaintiff's only claims against the State Bar Defendants are barred by the Eleventh Amendment and dismiss this case without leave to amend.

### B. The SAC Should be Dismissed Pursuant to Federal Rule of Civil Procedure 12(b)(6) Because It Fails to State a Claim Upon Which Relief Can Be Granted

Even assuming, *arguendo,* that Eleventh Amendment immunity does not apply, Plaintiff fails to state a claim upon which relief can be granted.

### 1. Plaintiff Has Failed to State a Claim for Retaliation Under the ADA

Plaintiff's first cause of action purports to be for retaliation under Title V of the ADA. Although this Court previously concluded that Plaintiff's allegations were sufficient to state a retaliation claim, the State Bar Defendants maintain that the allegations of the SAC are largely legal conclusions, and the few facts that Plaintiff does allege do not state a claim for retaliation under Title V of the ADA.

The Ninth Circuit applies the Title VII burden-shifting framework to retaliation claims under the ADA. *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 472–73 (9th Cir. 2015) (citing *Brown v. Tucson*, 336 F.3d 1181, 1186–87 (9th Cir. 2003)). To establish a prima facie case for retaliation under the ADA, a plaintiff must establish that: (1) he engaged in a protected activity; (2) he suffered an adverse action subsequent to engaging in the protected conduct; and (3) there was a causal link between the two. *See Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004). The Ninth Circuit applies the but-for causation test for the causal link element. *T.B. ex rel. Brenneise*, 806 F.3d at 473.

-17-

1    Plaintiff alleges he engaged in a protected activity in July 2021 by appealing the State

2  Bar Defendants' initial decision to deny his requested accommodations, and by filing a

3  complaint with the DOJ and his representative requesting an investigation into whether

4  Defendants violated Plaintiff's civil rights or discriminated against him. SAC ¶ 45. But, as

5  discussed in connection with *Georgia* step one (*see* Section IV(A)(1), *supra*), Plaintiff has not

6  alleged the nature of his disability, the accommodations he requested, how those

7  accommodations related to his disability, or the existence of specific reasonable

8  accommodations that the State Bar Defendants purportedly failed to provide. *Duvall*, 260 F.3d

9  at 1135; *Memmer*, 169 F.3d at 633.

10    Nor does Plaintiff adequately allege that he suffered an adverse action. Plaintiff appears

11  to argue that he really passed the exam, but that the State Bar would not rescore his exams "in

12  retaliation" for asking for accommodations and his complaint with DOJ. His allegations of

13  retaliation are expressly conclusory—he alleges what happened, and then purports to explain his

14  conclusion about how that "suggest[s] or "indicates" retaliation. SAC ¶¶ 44, 47, 50, 55, 57–58,

15  59. Plaintiff also alleges that the State Bar refused to reconsider his grades "due to his disability

16  and his complaint submitted to the DOJ." SAC ¶ 63. Even crediting that false assertion, Plaintiff

17  does not demonstrate that declining to reconsider his essay scores is an adverse action because

18  Plaintiff does not, and cannot, show that he would have been entitled to reconsideration of his

19  failing exam scores under any circumstances whether or not he filed a complaint.

20    Finally, Plaintiff does not adequately allege causation. Plaintiff alleges that his failing

21  the February 2023 examination was somehow retaliation for his protected activity of requesting

22  accommodations and complaining to the DOJ and his representative over a year and a half

23  earlier in July 2021. SAC ¶ 54. Plaintiff alleges that because he purportedly did well on the

24  multiple choice (then, the MBE) section of the exam, the State Bar "must have made some sort

25  of error in grading [his] written answers," that his low scores on the written portion of the exam

26  "defies all common sense," and that "Defendants must have made some sort of error" but

27  alleges no causal connection between his protected activity and his failing the February 2023

28  exam. SAC ¶¶ 56–57. Here, Plaintiff has not adequately alleged a causal connection between

-18-

1    Plaintiff's purported protected activity in 2021 and his failure to pass the February 2023 Bar

2    Exam for multiple reasons.

3           First, "ADA retaliation claims must. . . be analyzed under traditional but-for causation"

4    principles—in other words, that the adverse action would not have occurred in the absence of

5    the protected activity. *Gallagher v. San Diego Unified Port Dist.*, 14 F. Supp. 3d 1380, 1386–87

6    (S.D. Cal. 2014), *aff'd*, 668 F. App'x 786 (9th Cir. 2016). Plaintiff's assertion that the reason he

7    failed the February 2023 Bar Exam was retaliation by the State Bar Defendants rather than his

8    own inability to obtain a passing score plainly falls short of the but-for causation standard, and

9    instead rests on pure speculation unsupported by any facts. *See Iqbal*, 556 U.S. at 678 (a

10   plaintiff must allege facts that consist of more than "a sheer possibility that a defendant has

11   acted unlawfully"); *Twombly*, 550 U.S. at 555 (a plaintiff must allege *facts* sufficient to "raise a

12   right to relief above the speculative level"). Indeed, Plaintiff's theory is undercut by his own

13   allegations. The SAC alleges that Plaintiff also failed the July 2021 and July 2022 Bar Exams—

14   indicating that the reason why Plaintiff was unable to pass the February 2023 Bar Exam is that

15   he has consistently scored below the minimum passing score on multiple administrations of the

16   exam. SAC ¶¶ 17–20.

17          Second, while causation may be inferred based on the temporal proximity between the

18   protected action and the allegedly retaliatory conduct, *see Yartzoff v. Thomas*, 809 F.2d 1371,

19   1376–77 (9th Cir. 1987), the 22-month lapse between his alleged protected activity and his

20   February 2023 Bar Exam results fails to establish the requisite temporal proximity. *See*

21   *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (causation may be

22   inferred from timing alone if the proximity between the protected activity and adverse action is

23   "very close" but 18-month lapse is too long for inference); *see also Vasquez v. County of Los*

24   *Angeles*, 349 F.3d 634, 646 (9th Cir. 2003) (13 months too long). Accordingly, Plaintiff has not

25   alleged causation.

26          For each of these reasons, the Court should find that Plaintiff's first cause of action fails

27   to state a claim upon which relief can be granted.

28   ///

### 2.     Brewer Has Still Failed to State a Claim for Coercion or Intimidation under the ADA

This Court previously held that Plaintiff failed to state a claim for coercion or intimidation under the ADA. Dkts. 25, 29. The SAC does nothing to change that result.

"The Ninth Circuit has not specifically described the elements required to establish a violation of § 12203(b), nor has it defined what 'intimidation' or 'coercion' mean in the context of § 12203(b)." *Armstrong v. Newsom*, 2021 WL 933106, at *26 (N.D. Cal. March 11, 2021). In *Brown v. City of Tucson*, the Ninth Circuit held that a plaintiff stated a claim for a violation of § 12203(b) by alleging facts showing that: (1) her employer threatened her with an adverse action; (2) the threat had a nexus to her exercise or enjoyment of an ADA right; and (3) she suffered "distinct and palpable" injury as a result of the threat. 336 F.3d 1181, 1191–93 (9th Cir. 2003). The SAC alleges no facts showing, in non-conclusory terms, that the State Bar Defendants threatened Plaintiff and that any threat had a nexus to his exercise or enjoyment of an ADA right. SAC ¶¶ 70,72, 74, 76, 80–81, 84, 86; *see Israel v. Carter*, 2022 WL 874941, at *5 (E.D. Cal. March 24, 2022) (dismissing claim where plaintiff failed to allege that the defendant threatened her and that the threat had a nexus to plaintiff's exercise or enjoyment of an ADA right).

Here, Plaintiff has not pled any facts regarding any specific instance of coercion, intimidation, threatening conduct, or interference, nor has he pled a "distinct and palpable injury" as a result of such conduct. *Brown*, 336 F.3d at 1193. Instead, his second cause of action is just a rehash of his first, with a conclusory argument that the State Bar "interfered with" his rights. SAC ¶¶ 66–80. That does not state a coercion claim under the ADA, and this claim should again be dismissed—this time without leave to amend.

### 3.     The State Bar Defendants Cannot Be Sued for Compensatory or Punitive Damages

The SAC purports to seek general, actual, and punitive damages. *See* SAC, Prayer for Relief. As the Supreme Court held in *Barnes v. Gorman*, 536 U.S. 181 (2002), punitive damages are not available under Title II of the ADA. *Id.* at 189-90; *Lovell v. Chandler*, 303 F.3d 1039, 1048 n. 3 (9th Cir. 2002). Plaintiff's request for punitive damages must therefore be dismissed

-20-

1    without leave to amend. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974–75 (9th

2    Cir. 2010) (where a plaintiff cannot recover damages as a matter of law, the proper procedural

3    vehicle to dismiss the request is a motion under Rule 12(b)(6)); *Jones v. City of Vallejo*, No.

4    2:24-CV-01199-CSK, 2025 WL 318076, at *8 (E.D. Cal. Jan. 28, 2025) (dismissing punitive

5    damages claim under Rule 12(b)(6)); *Kelley v. Corr. Corp. of Am.*, 750 F. Supp. 2d 1132, 1146-

6    48 (E.D. Cal. 2010).

7            More broadly, the Ninth Circuit held in *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261

8    (9th Cir. 2009), that punitive and compensatory damages are also "not available for ADA

9    retaliation claims." *Id.* at 1270. Although some older unpublished district court cases did not

10   apply *Alvarado* to claims against a public entity, more recent cases follow *Alvarado* in public

11   entity cases. *See Romero v. Garland*, 2024 WL 1099300, at *10 (S.D. Cal. Mar. 13, 2024)

12   (*Alvarado* applies to all ADA retaliation claims claims); *Reed v. Fox*, 2023 WL 6930802, at *9

13   (E.D. Cal. Oct. 19, 2023), *report and recommendation adopted*, 2024 WL 1304961 (E.D. Cal.

14   Mar. 27, 2024) (damages not available for ADA retaliation claim with underlying Title II

15   allegations); *Caldwell v. Del Toro*, 2022 WL 1719132, at *2 (W.D. Wash. May 27, 2022)

16   (*Alvarado* applies to all ADA retaliation claims); *but see Herrera v. Giampietro*, 2010 WL

17   1904827, at *9 (E.D. Cal. May 10, 2010) (distinguishing *Alvarado* as applying to private entity

18   defendants). Under *Alvarado*, Plaintiff's request for compensatory damages must also be

19   dismissed without leave to amend.

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

**V.      CONCLUSION**

The State Bar Defendants have immunity from suit in this Court, and that immunity was not validly abrogated by Congress in this context under Title II of the ADA. Nor does Plaintiff allege *facts* that plausibly state a claim for retaliation, coercion, or damages under the ADA in any event. For all of these reasons, the Court should grant the State Bar Defendants' motion and dismiss this action without further leave to amend.

Dated: April 17, 2025                     STATE BAR OF CALIFORNIA
                                          OFFICE OF THE GENERAL COUNSEL


                                   By: */s/ JEAN R. KRASILNIKOFF*
                                          JEAN R. KRASILNIKOFF
                                          Assistant General Counsel
                                          Attorneys for Defendants
                                          STATE BAR OF CALIFORNIA, BOARD OF
                                          TRUSTEES, COMMITTEE OF BAR
                                          EXAMINERS

## DECLARATION OF SERVICE

I, Ryan Sullivan, hereby declare: that I am over the age of eighteen years and am not a party to the within above-entitled action, that I am employed in the City and County of San Francisco, that my business address is The State Bar of California, 180 Howard Street, San Francisco, CA 94105.

On April 17, 2025, following ordinary business practice, I filed via the United States District Court, Eastern District of California electronic case filing system, the following:

**DEFENDANTS THE STATE BAR OF CALIFORNIA, BOARD OF TRUSTEES, AND COMMITTEE OF BAR EXAMINERS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Participants in the case who are registered CM/ECF users will be served.

*See the CM/ECF service list.*

I also served a copy on the following parties:

Terrence Brewer
4748 Whitney Avenue
Carmichael, CA 95608
terrence.brewer87@yahoo.com
Pro Per

By the following means:

☒    (***By U.S. Mail***) By enclosing the foregoing documents in a sealed envelope or package addressed to the persons at the addresses above and either:

    ☒    depositing the sealed envelope with the United States Postal Service, with the postage fully prepaid; or

    ☐    placing the envelope for collection and mailing following our ordinary business practices. I am readily familiar with the State Bar's business practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury that the foregoing is true and correct. Executed at San Francisco, California, on April 17, 2025.

*Ryan Sullivan*
_____
Ryan Sullivan

-23-