ELLIN DAVTYAN (238608)
General Counsel
KIRSTEN GALLER (227171)
Deputy General Counsel
JENNIFER KO (324623)
Assistant General Counsel
OFFICE OF GENERAL COUNSEL
THE STATE BAR OF CALIFORNIA
845 South Figueroa Street
Los Angeles CA 90017
Telephone: (213) 765-1269 / Fax: (415) 538-2321

JEAN R. KRASILNIKOFF (280450)
Assistant General Counsel
HELENE A. SIMVOULAKIS-PANOS (256334)
Assistant General Counsel
OFFICE OF GENERAL COUNSEL
THE STATE BAR OF CALIFORNIA
180 Howard Street
San Francisco, CA 94105-1639
Tel: (415) 538-2388
Fax: (415) 538-2321
Email: helene.simvoulakis-panos@calbar.ca.gov

Attorneys for Defendants
STATE BAR OF CALIFORNIA, BOARD
OF TRUSTEES, COMMITTEE OF BAR
EXAMINERS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRENCE BREWER<br><br>Plaintiff,<br><br>vs.<br><br>CALIFORNIA STATE BAR; BOARD OF TRUSTEES; COMMITTEE OF BAR EXAMINERS; and THEIR AGENTS IN THEIR OFFICIAL CAPACITY; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 2:23-cv-00860-TLN-JDP<br><br>**DECLARATION OF AMY NUÑEZ IN SUPPORT OF DEFENDANTS THE STATE BAR OF CALIFORNIA, BOARD OF TRUSTEES, AND COMMITTEE OF BAR EXAMINERS' OPPOSITION TO PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF**<br><br>DATE:          May 1, 2025<br>TIME:          10:00 a.m. via Zoom<br>COURTROOM:  9, 13th Floor<br>JUDGE:        Hon. Jeremy D. Peterson |

I, Amy Nuñez, hereby state and declare the following:

1. I am employed by the State Bar of California ("State Bar") as the Assistant Director of Administration and Examination for the Office of Admissions. This declaration is provided in support of Defendants the State Bar of California, Board of Trustees, and Committee of Bar Examiners' ("State Bar Defendants") Opposition to Plaintiff's Motion for Injunctive Relief. I have personal knowledge of the facts stated in this declaration. I could and would testify competently to the facts contained in this declaration.

2. Prior to April 17, 2023, I held the position of Director of the Office of Admissions. In that capacity, my duties included oversight of all Admissions matters and management of all State Bar Admissions' staff, including staff who review and process testing accommodations and requests for grading reconsideration.

3. The California General Bar Examination ("GBX") is conducted twice a year, in February and July. For the July 2021, July 2022, and February 2023 exams, the GBX consisted of five essay questions, one performance test, and 200 multiple-choice questions, provided by the National Conference of Bar Examiners and referred to as the Multistate Bar Examination ("MBE").

4. The method of scoring the GBX, including the grading of the written portion of the exam, is described on the State Bar of California's website at https://www.calbar.ca.gov/Admissions/Examinations/California-Bar-Examination/Grading. As described in that webpage, the Bar Exam is graded by six panels of graders which are each responsible for reviewing and grading the written answers to a single question. The panels, which are supervised by a member of the State Bar's Exam Development and Grading Team, meet three times early in the grading cycle to calibrate grading. During the first calibration meeting, graders discuss a set of sample answers they received prior to the session. Then the graders receive a set of fifteen answer files submitted in response to their assigned question from a sample of the applicant pool. The graders independently read and grade the first answer file and after each grader assigns a grade, the group discusses the answer, the grades assigned, and develops a consensus grade for the answer file. The answer files are assigned raw scores in

1    five- point increments, on a scale of 40 to 100. This process is repeated for each of the fifteen

2    answer files. The graders on each panel then receive 25 new answer files and independently

3    review and grade the answer files and submit their grades for analysis. During the second

4    meeting, each panel discusses the 25 answer files and the grading analysis. The panels re-read

5    and discuss any answer files where there was significant disagreement among graders and

6    resolve the differences through further discussion. Once that is completed, the panel reviews an

7    additional ten answer files together, which are discussed and graded in the same manner as the

8    original fifteen files. Following the meeting, graders are assigned their answer files to grade

9    independently. The panels convene one final time during independent grading to review the

10   grading standards and the panel reads an addition ten answer files as a group to ensure that the

11   panel is grading to the same standards. A true and correct copy of the webpage setting forth, in

12   detail, how the written portions of the GBX are graded, is attached hereto as Exhibit A. The

13   information in Exhibit A accurately describes how the written portions GBX was graded prior to

14   2021 and through the present day.

15        5.    All applicants for the GBX are assigned an Examination Enrollment ID number

16   by the Admissions Information Management System ("AIMS") (also referred to as Applicant

17   Portal) once their application to take a bar exam is approved. That number is used to identify the

18   applicant's answer files, and is not provided to the applicant until after the exam results are

19   released. The Examination Enrollment ID number is the only number that appears on the answer

20   files that are provided to graders during the grading process. The applicant's name and other

21   information is not placed on any examination answer.  All applicants are also assigned an

22   Applicant Number for each exam, and that number is known to the applicant. Neither the

23   Examination Enrollment ID numbers, nor the Applicant Numbers contain codes or other

24   information that can be used to identify anything about the applicant or their identity. The only

25   people with access to a cross-reference of applicant names, Examination Enrollment ID

26   numbers, and Applicant Numbers are internal staff at the State Bar's Office of Admissions who

27   do not grade the exams.

28

6.      Examination answers are graded by a staff of approximately 150 experienced attorneys who act as graders. None of these graders are regular employees of the State Bar. Graders are not given any information about the applicant whose examinations they are grading other than the Examination Enrollment ID numbers. The grading is thus entirely anonymous; there is no way for a grader to associate an Applicant Number or Examination Enrollment ID number with any individual person. Applicants are assigned new Examination Enrollment ID numbers and Applicant Numbers each time they take an exam; the numbers do not remain with the applicant if the applicant takes a future exam.

7.      Where an applicant for the GBX has been granted testing accommodations, that applicant's examination answers contain no information reflecting the fact of those accommodations.

8.      As described in more detail in Exhibit A, each essay or performance exam is graded with a raw score of 40 to 100 in five-point increments based on standards set during a grader calibration exercise. Each of an applicant's five essays and performance test answers are assigned to different graders. Thus, the first reading of each applicant's written examination is conducted by six independent graders, none of whom have any information about the applicant. Graders assigned to different questions do not know what grades an applicant received on their other written answers.

9.      The State Bar's website describes the scaling process and methodology. Attached as Exhibit B is a true and correct copy of the State Bar's description of scaling that was in effect prior to 2025. The raw scores on all components of the examination are combined to scale the scores to the same units of measurement used for the multiple-choice portion of the exam. which provides more information the scaling process.

10.     Since October 2020, by order of the California Supreme Court, the passing score on the GBX has been 1390. Prior to that time, the Supreme Court set that score at 1440.

11.     If an applicant's total scaled score on the GBX is at least 1390, the applicant passes the exam. If the applicant's total scaled score on the GBX is below 1350, the applicant fails the exam. Where an applicant scores 1350 or above, but not at least 1390, the State Bar

assigns all of the applicant's written answers to a separate set of six graders for a second grading. The second set of scores is then scaled, and an average total scaled score calculated based on the two rounds of grading. Where that average total scaled score is 1390 or above, the applicant passes the GBX. If the average total scaled score is below 1390, the applicant fails.

12.     Written answers to the GBX are returned to applicants who do not pass the exam with their scores. Applicants who pass the exam do not receive their written scores. The multiple-choice portion of the GBX (questions and answers) is not provided to applicants after the exam, whether they pass or not.

13.     Because of these extensive grading procedures, including a second independent scoring for exams that receive scores of between 1350–1389 during the first phase of grading, the State Bar only permits requests for grading reconsideration in limited circumstances. The State Bar's "reconsideration of grade" policy, which was in place at the time Plaintiff took his the 2021, 2022, and 2023 exams, stated:

> The committee believes that its grading and administrative systems afford each applicant a full and fair opportunity to take the exam and a fair and careful consideration of all their exam answers on the bar exam, and that no useful purpose would be served by further consideration by the Committee. For this reason, the Committee will consider requests for reconsideration only when an applicant establishes with documented evidence that one of the following a resulted in failure or prevented the exam from being properly graded:
>
> 1.     An arithmetical error in the calculation of the total written score from the final grades assigned to the written questions or in the calculation of the total MBE score; or
> 2.     A clerical error.
>
> The Committee will **not** extend reconsideration based on challenges to its grading system or the judgments of its professional graders. Requests for reconsideration submitted by or on behalf of an unsuccessful applicant must be in writing and meet the criteria noted above. Requests not meeting those criteria may be summarily denied on that basis, without further explanation.

Attached as Exhibit C is a true and correct copy of a staff report from the Committee of Bar Examiners' March 24, 2023, meeting reflecting proposed changes to the policy regarding reconsideration of grades. Attached as Exhibit D is a true and correct copy of

the minutes from the Committee of Bar Examiners' March 24, 2023 meeting, reflecting those changes were adopted.

14.    This grading reconsideration policy is applied uniformly and on an equal basis to all persons who fail the GBX.  Reconsideration is extremely rare. No requests to reconsider written answers were granted for the July 2021, or July 2022 examinations. Only one request for grading reconsideration was granted in relation to the February 2023 exam due to a clerical error.

15.    Applicants are provided with the State Bar's grading policies prior to taking the examination in connection with their "admittance ticket" forms. True and correct copies of the Admittance Ticket Bulletin for the July 2021, July 2022, and February 2023 examinations are attached hereto, respectively, as Exhibits E, F, and G.

16.    As revealed in his pleadings in this case, Terrence Brewer took the GBX in July 2021. His written answers were initially graded by six different graders. His scores qualified for a second read, and his answers were then again graded by a different set of six graders. Pursuant to the State Bar's general policies and practices, the only information provided to anyone involved in grading Mr. Brewer's July 2021 GBX answers was his Examination Enrollment ID number. No one involved in the grading of Mr. Brewer's examination had any information about who he was, whether he had taken the examination before, whether he was disabled, whether he had received accommodations, how any other grader had graded other answers provided by him, or any other information whatsoever about him. As he reveals in his pleadings, Mr. Brewer did not receive an average total scaled score of at least 1390 on the July 2021 GBX.

17.    As revealed by his pleadings in this case, Mr. Brewer asked for reconsideration of his July 2021 GBX scores but did not identify any arithmetical or clerical error in adding the scores that would have allowed for reconsideration. Instead, Mr. Brewer's request was based on his belief that his answers warranted a passing score. Pursuant to the State Bar's written policy and consistent practice, Mr. Brewer's reconsideration request was denied. The denial of that request had absolutely nothing to do with Mr. Brewer's identity, his claimed disability, his request for or receipt of accommodations, any complaints he may or may not have made to any

-6-

1  person, or anything else other than the fact that there was no mathematical error in adding the

2  scores that would have qualified for reconsideration.

3      18.      As revealed in his pleadings in this case, Mr. Brewer took the GBX in July 2022.

4  His written answers were initially graded by six different graders. None of those graders had

5  graded any portion of his July 2021 GBX. His scores qualified for a second read, and his

6  answers were then again graded by a different set of six graders, none of whom graded any

7  portion of his July 2021 GBX. Pursuant to the State Bar's general policies and practices, the

8  only information provided to anyone involved in grading Mr. Brewer's July 2022 GBX answers

9  was his Examination Enrollment ID number. No one involved in the grading of Mr. Brewer's

10  examination had any information about who he was, whether he had taken the examination

11  before, whether he was disabled, whether he had received accommodations, how any other

12  grader had graded other answers provided by him, or any other information whatsoever about

13  him. As he reveals in his pleadings, Mr. Brewer did not receive an average total scaled score of

14  at least 1390 on the July 2022 GBX. Mr. Brewer did not request reconsideration of his July

15  2022 GBX scores.

16      19.      As revealed in his pleadings in this case, Mr. Brewer took the GBX in February

17  2023. His written answers were initially graded by six different graders. His scores qualified for

18  a second read, and his answers were then again graded by a different set of six graders. Pursuant

19  to the State Bar's general policies and practices, the only information provided to anyone

20  involved in grading Mr. Brewer's February 2023 GBX answers was his applicant number. No

21  one involved in the grading of Mr. Brewer's examination had any information about who he

22  was, whether he had taken the examination before, whether he was disabled, whether he had

23  received accommodations, how any other grader had graded other answers provided by him, or

24  any other information whatsoever about him. As he reveals in his pleadings, Mr. Brewer did not

25  receive an average total scaled score of at least 1390 on the July 2022 GBX.

26      20.      As revealed by his pleadings in this case, Mr. Brewer asked for reconsideration

27  of his February 2023 GBX scores but did not identify any clerical error in adding the scores that

28  would have allowed for reconsideration. Instead, Mr. Brewer's request was based on his belief

that his answers warranted a passing score. Pursuant to the State Bar's written policy and consistent practice, Mr. Brewer's reconsideration request was denied. The denial of that request had absolutely nothing to do with Mr. Brewer's identity, his claimed disability, his request for or receipt of accommodations, any complaints he may or may not have made to any person, or anything else other than the fact that there was no mathematical error in adding the scores that would have qualified for reconsideration.

21.     Over three cycles of the GBX, Mr. Brewer completed fifteen written essays and three written performance tests. Those 18 written answers were each graded twice, by a total of 36 graders, none of whom had any information whatsoever about whose exam was being scored or under what conditions the answer was written.

22.     In paragraph 63 of his Second Amended Complaint, Mr. Brewer alleges that on or about June 1, 2023, I "conveyed that due to Plaintiff's disability and his complaint submitted to the DOJ, he is 'not eligible for a grade reconsideration' thus, he is ineligible to practice law in the State of California." Mr. Brewer's allegation is wholly false. I never told him, whether by email, phone, or in any other communication, that either his disability or his complaint to the DOJ had anything to do with whether he was eligible for grade reconsideration. Nor did either of those facts have anything to do with his eligibility for grade reconsideration. Mr. Brewer was not eligible for grade reconsideration because an applicant's belief that they should have received a higher score is not a basis for grade reconsideration under the State Bar's written and consistently applied policies. While Mr. Brewer apparently believes that his multiple-choice score somehow suggests he should have gotten passing scores on the written portions of the examination, that belief also provides no basis for grade reconsideration.

23.     All of my communication to Mr. Brewer on or around June 1, 2023 was in writing, via email.  A true and correct copy of my only communication to him on that date is attached hereto as Exhibit H.

//

//

1    I declare under penalty of perjury that the foregoing is true and correct. Executed on

2  April 17, 2025

3

4                                                    _____

                                                     AMY NUÑEZ
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

The State Bar *of California*

# California Bar Exam Grading

## Overview

The California Bar Exam consists of the General Bar Exam and the Attorneys' Exam.

The General Bar Exam consists of three parts: five essay questions, one performance test (PT), and a 200 multiple-choice question (MCQ) exam. The parts of the exam may not be taken separately. The Attorneys' Exam consists of the essay questions and a performance test.

## Essay Questions

The essay questions are designed to be answered in one hour each and to test legal analysis under a given fact situation. Answers are expected to demonstrate the applicant's ability to analyze the facts in the question, to tell the difference between material facts and immaterial facts, and to discern the points of law and fact upon which the case turns. The answer must show knowledge and understanding of the pertinent principles and theories of law, their qualifications and limitations, and their relationships to each other. The answer should evidence the applicant's ability to apply the law to the given facts and to reason in a logical, lawyer-like manner from the premises adopted to a sound conclusion. An applicant should not merely show that they remember the legal principles but should demonstrate their proficiency in using and applying them.

## Performance Test

PT questions are designed to be completed in 90 minutes and to test an applicant's ability to handle a select number of legal authorities in the context of a factual problem involving a client. A PT question consists of two separate sets of materials: a file and a library, with instructions advising the applicant on the task(s) to be performed. In addition to measuring an applicant's ability to analyze legal issues, PT questions require applicants to:

1. Sift through detailed factual material and separate relevant from irrelevant facts, assess the consistency and reliability of facts, and determine the need for and source of additional facts;
2. Analyze the legal rules and principles applicable to a problem and formulate legal theories from facts that may be only partly known and are being developed;
3. Recognize and resolve ethical issues arising in practical situations;
4. Apply problem-solving skills to diagnose a problem, generate alternative solutions, and develop a plan of action; and
5. Communicate effectively, whether advocating, advising a client, eliciting information, or effectuating a legal transaction.

An applicant's performance test response is graded on its compliance with instructions and on its content, thoroughness, and organization.

## Multiple-Choice Question (MCQ) Exam

Case 2:23-cv-00860-TLN-JDP    Document 59-1    Filed 04/17/25    Page 12 of 72

Beginning with the February 2025 administration of the bar exam, the MCQ exam is developed by the State Bar's contracted vendor, Kaplan Exam Services, LLC, and is subject to psychometric validation.

## Grader Calibration

The Committee of Bar Examiners maintains a diverse pool of approximately 150 experienced attorneys from which graders are selected for each grading cycle. Most of the graders have been grading bar exams for at least five years, and many of them have participated for well over 10 years.

Six groups, each consisting of experienced graders and up to four apprentice graders, are selected to grade the essay and PT answers. The groups convene three times early in the grading cycle for the purpose of calibration. A member of the Exam Development and Grading Team (EDGT) supervises each group of graders.

At the first calibration session, the graders discuss a set of sample answers they received prior to the session. These books are copies of answers written by a sample of the applicant pool. After this discussion, the graders receive a set of 15 copies of answers submitted for the current exam, and they begin by reading and assigning a grade to the first answer in the set. The group then discusses the grades assigned before arriving at a consensus, and the process is repeated for each answer in the set. After reading and reaching a consensus on the set of 15 books, the graders independently read a new set of 25 answers without further group discussion and submitted grades for analysis and review at the second calibration session.

At the second calibration session, graders discuss the results of the first meeting, reread and discuss any of the answers where significant disagreement was seen, and resolve the differences through further discussion. An additional 10 answer books are read, graded, and discussed before a consensus grade is assigned to each. The groups are then given their first grading assignments.

During the third calibration session, the grading standards are reviewed, and the graders read 10 additional answer books as a group to ensure that they are still grading to the same standards.

Graders evaluate answers and assign grades solely on the content of the response. The quality of handwriting or the accuracy of spelling and grammar are not considered in assigning a grade to an applicant's answer. Answers are identified by code number only; nothing about an individual applicant is known to the graders. Based on the panel discussions and using the agreed-upon standards, graders assign raw scores to essay and performance test answers in five-point increments, on a scale of 40 to 100. To earn a grade of 40, the applicant must at least identify the subject of the question and attempt to apply the law to the facts of the question. If these criteria are not met, the answer is assigned a zero.

## Phased Grading

All written answers submitted by applicants who completed the exam in its entirety are read at least once before pass/fail decisions are made. Based on the results of empirical studies relative to reliability, scores have been established for passing and failing after one reading of the exam. For applicants whose scores after the first read are near the required passing score, all answer books are read a second time, and

scores of the first and second readings are averaged. The total averaged score after two readings is then used to make a second set of pass/fail decisions.

To pass the exam in the first phase of grading, an applicant must have a total scale score (after one reading) of at least 1390 out of 2000 possible points. Those with total scale scores after one reading below 1350 fail the exam. If the applicant's total scale score is at least 1350 but less than 1390 after one reading, their answers are read a second time by a different set of graders. If the applicant's averaged total scaled score after two readings is 1390 or higher, the applicant passes the exam. Applicants with averaged total scale scores of less than 1390 fail the exam.

## Results

Results from the February administration of the exam are traditionally released in May, and results from the July administration are released in November.

Results are posted on the **Applicant Portal** at 6:00 p.m. On the day results are posted, applicants can also access the pass list on the **State Bar website**.

Applicants who have failed the exam receive the grades assigned to their written answers as well as their MCQ scores. The answer files of unsuccessful applicants will be posted in the Applicant Portal with the release of results.

Successful applicants do not receive their essay or MCQ grades and will not have their answers returned.

## Reconsideration of grade

The Committee of Bar Examiners believes that its grading and administrative systems afford each applicant a full and fair opportunity to take the exam and a fair and careful consideration of all their exam answers on the bar exam, and that no useful purpose would be served by further consideration by the Committee.

All scores have been automatically checked for mathematical errors. All answers with scores within the reread range after one reading have been regraded by a different set of graders and double-checked for any mathematical errors before grades were released. For these reasons, the Committee will consider requests for reconsideration only when an applicant establishes with documented evidence that a clerical error resulted in failure or prevented the exam from being properly graded.

The Committee will **not** extend reconsideration based on challenges to its grading system or the judgments of its professional graders. Requests for reconsideration submitted by or on behalf of an unsuccessful applicant must be in writing and meet the criteria noted above. Requests not meeting those criteria may be summarily denied by the Office of Admissions on that basis, without further review by the Committee or explanation. All requests for reconsideration of grades must be received by the Office of Admissions no later than two weeks after the release of exam results.

Copyright © 2025 The State Bar of California

# EXHIBIT B

https://www.calbar.ca.gov/Admissions/Examinations/California-Bar-Examination/Scaling

# Scaling Explained



## Why scale?

A different set of essay and performance task (PT) questions is used for each administration of the California Bar Examination. The questions asked on one administration may, as a group, be more difficult than those asked on some other administration. Similarly, the graders who grade the answers to the questions on one administration may, as a group, be more lenient than the graders who grade the answers on another administration. This potential variation in question difficulty and reader leniency between administrations could unduly affect an applicant's chances of passing.

## What is scaling?

Scaling is a statistical procedure that adjusts the scores assigned by the graders. This adjustment is used to ensure that an applicant's likelihood of passing is not affected by any variation in the difficulty of the written section (includes both the essay and PT questions) across administrations. Almost all United States jurisdictions scale their written scores.

## How is scaling done?

Scaling involves converting the sum of all score assigned by the Graders to the same units of measurement as that used for the Multistate Bar Examination (MBE). This is analogous to converting degrees of temperature measured in Fahrenheit to Celsius. On the bar examination, this conversion (or "scaling") essentially involves assigning the highest total written score that was earned by any applicant in a state the same value as the highest MBE score that was earned by any applicant in that state. The second highest essay score is assigned the same value as the second highest MBE score, and so on. This process is done separately for each administration of the examination. An applicant's written score is not affected by that applicant's own MBE score (or by the MBE or written scores of applicants in other states).

To improve the accuracy of the scaling process, a formula is used to make the conversion from the Grader-assigned written scores to scale scores. This

formula is shown below where: A = the sum of the applicant's Grader assigned scores across all the essay and PT questions in the test, B = mean of these scores across all applicants, C = the standard deviation (i.e., spread) of these scores for all applicants, D = the standard deviation of all applicants' MBE scores, and E = the mean of their MBE scores.  A simpler, but algebraically equivalent, version of this formula is used to report results.

Written Scale Score = [{(A − B) /C} x D] + E

# Why scale to the MBE?

The MBE has 200 multiple-choice questions. A different set of MBE questions is used for each administration of the examination. An applicant's MBE "raw" score is the number of questions answered correctly. Because the questions asked on one administration may, as a group, be more difficult than those asked on another administration, a raw score earned on one occasion may not signify the same degree of proficiency as that same score earned on another administration. This problem is addressed by a process called "equating'; equated scores are often labeled as MBE "scale" scores in reports of the results.

Equating adjusts for differences in the difficulty of the MBE's questions across administrations. It does this by calibrating the scores on each new version of the examination so that a given equated MBE score indicates the same degree of proficiency regardless of the examination on which it was earned. The equating process involves inserting into each new version of the MBE a set of questions that have been used before and whose difficulty is known. Equating adjusts the raw scores on the basis of whether the applicants taking the current version of the examination earn higher or lower scores on the repeated questions than did the applicants who answered these same questions on a previous administration. As a result of this adjustment, which is based on essentially all MBE takers nationally, an MBE equatedMBE score that was earned on one administration corresponds to the same level of proficiency as that same scale score on another administration. The National Conference of Bar Examiners (the organization that owns and produces the MBE) uses a method of equating known as Item Response Theory or IRT equating. Equating is used on virtually all large-scale multiple-choice tests (such as the LSAT, College Board Exams, etc.).

Equating cannot be used for bar examination written sections because it is not appropriate to repeat essay or PT questions across administrations of the

examination since they are published following each administration. However, there is a strong underlying relationship between written and MBE scores. As a result of this relationship, an increase or decrease in average MBE scores between administrations signals a corresponding change in average applicant ability. Because of this relationship and the equating process, MBE "scale" scores provide the best way to monitor differences in average applicant ability across administrations of the examination. Scaling written scores to the MBE subsequently results in having a given written scale score indicate about the same level of proficiency regardless of the examination on which that written scale score was earned.

# EXHIBIT C



# The State Bar
## of California

OPEN SESSION
AGENDA ITEM O-202
COMMITTEE OF BAR EXAMINERS

DATE:        **March 24, 2023**

TO:          **Members, Committee of Bar Examiners**

FROM:        **Robert Brody, Committee of Bar Examiners**
             **Dolores Heisinger, Committee of Bar Examiners**
             **Christina Doell, Program Manager, Office of Admissions**

SUBJECT:     **Action on Revisions to the Grading Rules, Policy & Statute: Recommendation to**
             **Circulate State Bar Rule for Public Comment**

---

## EXECUTIVE SUMMARY

Beginning in 2022, the Office of Admissions embarked on a comprehensive assessment of rules, practices, procedures, and client-facing material. The primary goal of this review was to improve case processing, customer service, and to update obsolete or outdated rules. This assessment has also been balanced by a review to determine whether the existing rules are necessary and appropriate to ensure public protection and to eliminate unnecessary barriers to admission.

This agenda item summarizes the policies that the working group has deemed appropriate without needing revisions, in addition to detailing the rules and policies where the working group is recommending modifications. The agenda item requests the following actions from the committee:

- Modify the committee's policy on the reconsideration of grades to remove the arithmetical error criteria, and include a time limit for requesting reconsideration after the release of exam results;
- Recommend that the Board of Trustees circulate rule 4.62 for a 45-day public comment period, and adopt as a legislative priority amending Bus. & Prof. Code § 6065, pertaining to the review of applicant materials post-exam.

San Francisco Office
180 Howard Street
San Francisco, CA 94105

www.calbar.ca.gov

Los Angeles Office
845 South Figueroa Street
Los Angeles, CA 90017

The proposed change to the policy on the reconsideration of grades is set forth in Attachment A and the proposed change to Bus. & Prof. Code § 6065 is set forth in Attachment B.

---

## BACKGROUND

At its January 2023 meeting, the Committee of Bar Examiners (committee) discussed definitions and policies that govern exam grading centered around test scores, applicant records, and post-examination materials. Committee members Robert Brody and Dolores Heisinger volunteered to work with staff on developing proposals to be brought back to the Committee. The proposals before the committee today are the result of that effort. References in this agenda item to the "working group" are to these committee members and the staff who worked with them.

The working group evaluated the entire set of current rules, committee guidelines, and policies related to exam grading to identify where revisions were needed.

### MPRE
State Bar Rule 4.59 and Bus. &Prof. Code[1] § 6060 are consistent in the requirement that to be certified to the Supreme Court for admission and a license to practice law, a person must take and pass the MPRE; however, it is committee policy that sets the passing score. In light of the fact that California and only other state share the highest required passing score in the nation, the working group discussed whether to reevaluate the passing score required for the MPRE. After seeking the insight of the full committee during its January 2023 meeting, the working group reconvened to discuss the importance of the MPRE in measuring a candidate's knowledge and understanding of established standards relating to the professional conduct of lawyers. The working group believes the MPRE is an appropriate measure to ensure public protection and recommends the committee keep the passing score of the MPRE at a scaled score of 86.

### "PARTIAL" EXAM TAKERS
The committee last changed its attendance policy in February 2018 for those taking the California Bar Exam (CBX) and the First-Year Law Students' Exam (FYLSX). The committee's written attendance policy, as communicated in the exam application instructions and the admittance ticket bulletin for the both the CBX and the FYLSX, states that only applicants who compete all portions of the exam will have the exam graded. Applicants who do not complete all portions of an exam will be considered "partial takers," and as such, will not have their exams graded. These applicants will not appear in the general statistics, are not counted towards their allocated law school's minimum pass rate[2], and are not treated as "immediate repeaters" if they register for the next exam administration.

In late 2020, the State Bar began administering both the CBX and FYLSX online remotely in response to the conditions caused by the COVID-19 pandemic. Currently, the State Bar administers the CBX as an in-person exam, however, the FYLSX continues to be administered

---

[1] All further statutory references are to this code unless otherwise noted.
[2] Consistent with California Accredited Law School (CALS) guidelines.

remotely online. A significant distinction between the format of an in-person exam and the online remote exam is how many questions are administered in each exam session. For in-person exams (CBX), the State Bar administers three (3) written questions during one session. For remotely administered online exams (FYLSX), each session consists of a single written question. Online exam sessions are broken up into smaller increments to accommodate the need for breaks coupled with the restriction of leaving the view of the camera while testing.

Given the current format of an online remote exam (FYLSX) being administered with a single question per session, the working group felt it important to reexamine its current policy regarding how "partial takers" are defined for remote exams. Statistically an individual could miss one or more exam questions, receive a grade of zero (0) and still pass the exam. Although it is statistically possible to pass the exam having missed a session, there is a low probability that the applicant would also have the near perfect scores required on the remainder of the exam to pass. Given the unlikelihood of this scenario occurring and the potential impact on the law school's pass rate, the working group does not recommend changes to the definition of partial exam takers at this time.

The discussion section below provides a comprehensive review of two items for which the working group recommends revision: the Committee's policy on the reconsideration of exam grades, and access to exam scores and answers after the release of exam results.

## DISCUSSION

### COMMITTEE POLICY ON RECONSIDERATION OF EXAMINATION GRADES

Staff was unable to determine the inception of the committee's policy regarding requests for reconsideration of an applicant's exam score; however, this policy was last brought to the committee in 2018 when the committee requested staff draft requirements and deadlines for requesting reconsideration of exam scores. The written policy currently states that the Committee will consider requests only when an applicant establishes with documented evidence that 1) an arithmetical error or 2) a clerical error resulted in failure or prevented the exam from being properly graded. The committee does not extend reconsideration based on challenges to its grading system or the judgments of its professional graders.[3]

On average, the State Bar receives 40-50 requests for reconsideration each exam cycle. In practice, applicants often request reconsideration of their exam results by questioning the committee's standardized grading procedures. Both the California Bar Exam (CBX) and the First-Year Law Students' Exam (FYLSX) use a two-phase grading process, which has a built-in regrade procedure that sends the exam answers for applicants who score below, but near the pass line, through a second round of grading. The current reconsideration policy attracts claims of possible arithmetical mistakes by applicants believing their grades should be higher, questioning the process of scaling grades, or wishing to pick and choose the higher grade when

---

[3] The current policy is posted on the State Bar website in the Exam section, https://www.calbar.ca.gov/Admissions/Examinations/California-Bar-Examination/Grading.

answers are sent through the two-phases of grading. These do not qualify as arithmetic or clerical errors.

Furthermore, with the transition to grading online, exam answers are now uploaded from the exam security software into the graders' portal. Scores are calculated using the grading software, which is also separately calculated and confirmed by staff multiple times prior to the release of results. While a reconsideration policy based on an arithmetical error may have made sense prior to the use of the enhanced grading software, the policy attracts claims of possible arithmetical mistakes without any demonstration of an arithmetic error.

In addition to examining the bases for requesting reconsideration, the working group noted that the reconsideration policy fails to specify how long after the release of results reconsideration requests may be made. The Office of Admissions has received requests for reconsideration many years after the administration of an exam, long after documents have been destroyed in accordance with the State Bar's record retention policy. For example, scratch envelopes, containing an applicant's used exam materials are only kept until the next exam administration. Other paperwork from an exam, such as attendance sheets, timing reports, etc., are kept for one year after the administration of the exam. Delays in requesting reconsideration make investigation of alleged incidents difficult.

The working group sought guidance from the full Committee at its January meeting on suggested policy variations regarding timelines for requesting reconsideration after an exam is administered. Since investigation of an applicant's claim of a clerical error oftentimes involves the need to check the contents of an applicant's scratch envelope or review paperwork from an exam, the working group recommends requiring requests for reconsideration be received by the Office of Admissions no later than two-weeks following the release of results. This will ensure that if any additional grading is needed post-exam, the grading team will still be calibrated to grade appropriately using the established standards set for that administration. The working group recommends that the Committee's policy on the reconsideration of grades be amended to add this two-week deadline after the release of results, as shown in Attachment A.

**ACCESS TO EXAMINATION ANSWERS AND SCORES**

Admissions Rule 4.62 requires that within 60 days of the release of exam results, exam answers to the written portion of the exam be returned to applicants who were unsuccessful on the California Bar Exam (CBX), or who have passed or failed the First-Year Law Students' Examination (FYLSX). This provision is not applicable to the multiple-choice portion of either exam. Bus. & Prof. Code § 6065, on the other hand, states that "any unsuccessful applicant for admission to practice, after he or she has taken any examination and within four months after the results thereof have been declared, has the right to inspect his or her examination papers at the office of the examining committee located nearest to the place at which the applicant took the examination." The section further notes that this right of inspection exists whether or not there are markings on the exam.

Perhaps as a result of the statutory language, applicants on occasion expect that when reviewing their exam answers, they will see notes and markings made by the graders. However, no such markings are made on exam answers. Whether their answers are accessed via the Applicant Portal, or in person, there are no markings for applicants to review. Furthermore, in 2019, the Office of Admissions transitioned from mailing exam answers by USPS to posting applicant answers electronically to the Applicant Portal immediately upon the release of exam results. Applicants are able to view, print, and download their exam results. However, due to space constraints associated with the case management system, if such action is not taken within 30 days, generally the exam answers are no longer accessible through the Applicant Portal. Since the applicants have the ability to print or download their answers, the working group believe this provides significantly better access than is envisioned in the statutory or rule language.

The working group recommends that State Bar Rule 4.62 be updated to reflect current practice of posting results on the Applicant Portal for 30 days. Additionally, the working group recommends updating the Bus. & Prof. Code § 6065 (a)(1) be amended to align with the timeline established in State Bar Rule 4.62, and to remove the requirement to inspect the papers "at the State Bar offices" in light of current practice of posting exam papers online. Furthermore, the working group recommends that Bus. & Prof. Code § 6065 (2) be eliminated to avoid confusion among applicants, as shown in Attachment B.

## FISCAL/PERSONNEL IMPACT

N/A

## AMENDMENTS TO RULES OF THE STATE BAR OF CALIFORNIA

Rule 4.62

## RECOMMENDATIONS

It is recommended that the Committee of Bar Examiners modify its current policy on the reconsideration of exam grades to remove the arithmetical error criteria and include a deadline of two-weeks after the release of results for requesting reconsideration as reflected in Attachment A.

It is further recommended that the Committee request that the Board of Trustees circulate revisions to rule 4.62 for a 45-day public comment period, and include among the legislative priorities amending Bus. & Prof. Code § 6065, as reflected in Attachment B, to clarify and align with current practice.

## PROPOSED MOTIONS

Should the Committee of Bar Examiners agree with these recommendations, the following motions would be appropriate:

> **MOVE,** that the Committee of Bar Examiners amend its policy to remove the arithmetical error criteria and include a two-week deadline after the release of exam results for requesting reconsideration of exam grades.

> **MOVE,** that the Committee of Bar Examiners recommends to the Board of Trustees to amend Bus. & Prof. Code § 6065, as set forth in Attachment B, during the Board's annual review period.

## ATTACHMENT(S) LIST

**A.** Proposed amendment to the policy regarding the reconsideration of grades

**B.** Proposed amendments to Rule 4.62 and Bus. & Prof. Code § 6065

**Proposed Amendment to Policy Regarding Reconsideration of Grades (Redline)**

The committee believes that its grading and administrative systems afford each applicant a full and fair opportunity to take the exam and a fair and careful consideration of all of their exam answers on the bar exam, and that no useful purpose would be served by further consideration by the Committee. <u>All scores have been automatically checked for mathematical errors and all answers with scores within the re-read range after one reading have been re-graded a second time by a different set of graders and double-checked for any mathematical errors before grades were released.</u> For this reason, the committee will consider requests for reconsideration only when an applicant establishes with documented evidence that <u>a clerical error</u> ~~one of the following~~ resulted in failure or prevented the exam from being properly graded.

~~1. An arithmetical error in the calculation of the total written score from the final grades assigned to the written questions or in the calculation of the total MBE score; or~~

~~2. A clerical error.~~

The committee will **not** extend reconsideration based on challenges to its grading system or the judgments of its professional graders. Requests for reconsideration submitted by or on behalf of an unsuccessful applicant must be in writing and meet the criteria noted above. Requests not meeting those criteria may be summarily denied on that basis, without further explanation. <u>All requests for reconsideration of grades must be received by the Office of Admissions no later than two-weeks after the release of exam results.</u>

**Proposed Amendment to Policy Regarding Reconsideration of Grades (Clean)**

The committee believes that its grading and administrative systems afford each applicant a full and fair opportunity to take the exam and a fair and careful consideration of all of their exam answers on the bar exam, and that no useful purpose would be served by further consideration by the Committee. All scores have been automatically checked for mathematical errors and all answers with scores within the re-read range after one reading have been re-graded a second time by a different set of graders and double-checked for any mathematical errors before grades were released. For this reason, the committee will consider requests for reconsideration only when an applicant establishes with documented evidence that a clerical error resulted in failure or prevented the exam from being properly graded.

The committee will **not** extend reconsideration based on challenges to its grading system or the judgments of its professional graders. Requests for reconsideration submitted by or on behalf of an unsuccessful applicant must be in writing and meet the criteria noted above. Requests not meeting those criteria may be summarily denied on that basis, without further explanation. All requests for reconsideration of grades must be received by the Office of Admissions no later than two-weeks after the release of exam results.

**Rule 4.62 Access to examination answers and scores (Redline)**

(A) ~~Within sixty days of the release of examination results,~~ ~~E~~xamination answers to the written portion of the examination are returned to applicants for admission who have failed the California Bar Examination or who have passed or failed the First-Year Law Students' Examination. Applicant answers are available to download, print, or save for 30 days after the release of results. After this allotted time, the exam answers from the last administered exam are available upon submitting the Document Copy Request Form and payment of fee. This provision does not apply to the Multistate Professional Responsibility Examination or the multiple-choice portion of the First-Year Law Students' Examination and California Bar Examination.

(B) Applicants who pass the California Bar Examination are not entitled to receive their examination answers or to see their scores.

**Rule 4.62 Access to examination answers and scores (Clean)**

(A) Examination answers to the written portion of the examination are returned to applicants for admission who have failed the California Bar Examination or who have passed or failed the First-Year Law Students' Examination. Applicant answers are available to download, print, or save for 30 days after the release of results. After this allotted time, the exam answers from the last administered exam are available upon submitting the Document Copy Request Form and payment of fee. This provision does not apply to the Multistate Professional Responsibility Examination or the multiple-choice portion of the First-Year Law Students' Examination and California Bar Examination.

(B) Applicants who pass the California Bar Examination are not entitled to receive their examination answers or to see their scores.

**Proposed Amendments to Bus. & Prof. Code § 6065 (Redline)**

~~(a)~~ (1) Any unsuccessful applicant for admission to practice~~, after he or she has taken any examination and within four months after the results thereof have been declared,~~ has ~~the right to inspect his or her~~ access to their written session ~~examination~~ answers ~~papers~~ for 30 days after the release of results.~~at the office of the examining committee located nearest to the place at which the applicant took the examination.~~

~~(2) The applicant also has the right to inspect the grading of the papers whether the record thereof is marked upon the examination or otherwise.~~

~~(b) This section shall become operative on January 1, 2009.~~

**Proposed Amendments to Bus. & Prof. Code § 6065 (Clean)**

Any unsuccessful applicant for admission to practice has access to their written session answers for 30 days after the release of results.

# EXHIBIT D



The State Bar
*of California*

Committee of Bar Examiners
Teleconference

Open Session Minutes
Friday, March 24, 2023
9:03 a.m. – 5:05 p.m.

| | |
|---|---|
| **Time Meeting Commenced:** | The Committee of Bar Examiners meeting commenced in open session at 9:03 a.m. The Committee moved to closed session at 9:25 a.m. The Committee returned to open session at 10:04 a.m.  The Committee moved to closed session at 2:33 p.m. The Committee returned to open session at 4:05 p.m. |
| **Time Meeting Adjourned**: | 5:05 p.m. |
| **Chair**: | Paul A. Kramer |
| **Committee Coordinator**: | Devan McFarland |
| **Members Present**: | James A. Bolton, Ph.D., Michael Cao, M.D, Alex H. Chan [joined late], Robert S. Brody, James Efting, Kareem Gongora [joined late], Dolores Heisinger, Judge James Herman, Larry Kaplan, Alexander C. Lawrence, Jr., Bethany J. Peak [joined late], Ashley Silva-Guzman, Vincent Reyes, and David A. Torres |
| **Members Absent:** | Judge Amy Guerra, Esther P. Lin, and Dr. Don Ajené Wilcoxson |
| **State Bar Executive Staff Present:** | Leah Wilson and Donna Hershkowitz |

**OPEN SESSION**

**Call to Order**

The Committee of Bar Examiners was called to order by Chair Kramer.

**I. Chair's Time**

    **A. Roll Call**

    Roll call was taken and a quorum was established.

    **B. Call for Public Comment**

San Francisco Office
180 Howard Street
San Francisco, CA 94105

www.calbar.ca.gov

Los Angeles Office
845 South Figueroa Street
Los Angeles, CA 90017

Chair Kramer called for public comment, inquiring as to whether there were person(s) who wished to comment on any agenda item. The following comments were provided to the Committee:

1. Benjamin Kohn
   Benjamin Kohn provided comment on the Testing Accommodations Rules Revisions and expressed the importance of including any necessary revisions to the proposal during the meeting rather than waiting for the final report to implement any changes. Benjamin Kohn also expressed their belief that the Testing Accommodations Rules Revisions do not include the aspects of the DOJ guidelines and the two-week staff commitment time.

2. Todd Hill
   Todd Hill advised the Committee of the lawsuit they filed for a resolution related to an issue with their law school, the Peoples College of Law.

3. Claudia Center, Legal Director for Disability Rights Education & Defense Fund
   Claudia Center expressed their concern that the Testing Accommodations Rules Revisions do not include a ready path to accommodations for applicants with disabilities.

4. Jackie Gardina, Dean and Chief Academic Officer, Colleges of Law
   Jackie Gardina provided comment on the Blue Ribbon Commission on the Future of the Bar Exam Final Report and expressed support for reciprocity. Jackie Gardina also expressed hope for the Committee of Bar Examiners openness to allowing an exploration of an alternative pathway to licensure so that issues identified by the dissents could be addressed and considered.

**C. Approval of January 27, 2023, Committee of Bar Examiners Public Meeting Minutes**

> **RESOLVED**, that the Committee of Bar Examiners approves and adopts the January 27, 2023, Committee of Bar Examiners public meeting minutes

*Moved by Robert S. Brody, seconded by Vincent Reyes*

*Ayes – (13)   James A. Bolton, Ph.D., Robert S. Brody, Michael Cao, M.D, Alex H. Chan, James Efting, Kareem Gongora,  Dolores Heisinger, Larry Kaplan, Alexander C. Lawrence, Jr., Paul A. Kramer, Ashley Silva-Guzman, Vincent Reyes, and David A. Torres*
*Noes – (0)*
*Abstain – (0)*
*Recuse- (0)*
*Absent – (4) Judge Amy Guerra, Esther Lin, Bethany Peak, and Dr. Don Ajené Wilcoxson*

*Minutes adopted.*

**D. Discussion of Finalized Points of Consensus**

> Discussion only.

**E. Approval of 2023 CBE Workplan**

Presentation and discussion only.

## II. Examinations

**A.  Action on Revisions to the Testing Accommodation Rules: Recommendation to Circulate for a Second Public Comment Period**

**RESOLVED**, that the Committee of Bar Examiners recommends to the Board of Trustees to circulate the modified revisions to the Chapter 7 Rules of the State Bar, which give considerable weight to testing accommodations approved by colleges or law schools for timed exams, and a definition of a "individual assessment" added (as set forth in the updated version of Attachment F), for a 45-day public comment period.

*Moved by Robert S. Brody, seconded by Vincent Reyes*

*Ayes – (12)  James A. Bolton, Ph.D., Robert S. Brody, Michael Cao, M.D, James Efting, Dolores Heisinger, Larry Kaplan, Alexander C. Lawrence, Jr., Bethany Peak, Paul A. Kramer, Ashley Silva-Guzman, Vincent Reyes, and David A. Torres*
*Noes – (1)  Kareem Gongora*
*Abstain – (0)*
*Recuse- (0)*
*Absent – (4) Alex H. Chan, Judge Amy Guerra, Esther Lin, and Dr. Don Ajené Wilcoxson*

*Motion passes.*

**RESOLVED**, that the Committee of Bar Examiners directs staff to return to the committee after the rules have been implemented for two (2) full bar exam cycles to explore adjusting the timelines in the rules.

*Moved by Robert S. Brody, seconded by Michael Cao, M.D*

*Ayes – (13)  James A. Bolton, Ph.D., Robert S. Brody, Michael Cao, M.D, James Efting, Kareem Gongora, Dolores Heisinger, Larry Kaplan, Alexander C. Lawrence, Jr., Bethany Peak, Paul A. Kramer, Ashley Silva-Guzman, Vincent Reyes, and David A. Torres*
*Noes – (0)*
*Abstain – (0)*
*Recuse- (0)*
*Absent – (4) Alex H. Chan, Judge Amy Guerra, Esther Lin, and Dr. Don Ajené Wilcoxson*

*Motion carries.*

**B.  Discussion of Blue Ribbon Commission on the Future of the Bar Exam Report Recommendations**

**RESOLVED**, that the Committee of Bar Examiners agrees with and joins in the dissenting opinion of Alex Chan.

3

*Moved by David A. Torres, seconded by Robert S. Brody*

Ayes – (11)   James A. Bolton, Ph.D., Robert S. Brody, Michael Cao, M.D, James Efting,
              Dolores Heisinger, Larry Kaplan, Alexander C. Lawrence, Jr., Bethany Peak,
              Paul A. Kramer, Vincent Reyes, and David A. Torres
Noes – (2)   Kareem Gongora, Ashley Silva-Guzman
Abstain – (0)
Recuse- (0)
Absent – (4) Alex H. Chan, Judge Amy Guerra, Esther Lin, and Dr. Don Ajené Wilcoxson

*Motion carries.*

**C. Action on Revisions to the Grading Rules, Policy & Statute: Recommendation to Circulate State Bar Rule for Public Comment**

**RESOLVED**, that the Committee amend its policy on the reconsideration of grades to remove the criteria of arithmetical errors from its policy, and to include a two-week deadline after the release of exam results for requesting reconsideration of exam grades.

**RESOLVED** that the Committee recommends to the Board of Trustees to circulate State Bar Rule 4.62, with "returned" changed to "made available" for a 45-day public comment period and include among the legislative priorities amending Bus. & Prof. Code § 6065 to clarify and align with current practice.

*Moved by Robert S. Brody, seconded by Dolores Heisinger*

Ayes – (12)   James A. Bolton, Ph.D., Robert S. Brody, Michael Cao, M.D, James Efting, Kareem
              Gongora, Dolores Heisinger, Alexander C. Lawrence, Jr., Bethany Peak, Ashley Silva-
              Guzman Paul A. Kramer, Vincent Reyes, and David A. Torres
Noes – (0)
Abstain – (0)
Recuse- (0)
Absent – (5) Alex H. Chan, Judge Amy Guerra, Larry Kaplan, Esther Lin, and Dr. Don Ajené
              Wilcoxson

*Motion carries.*

## III. Operations and Management

**A. Action on Revisions to the Admissions Rules Pertaining to Chapter 6 Conduct Violations and Exam Administration: Recommendation to Circulate for Public Comment**

Item withdrawn.

**B. Action on Rules Revisions Regarding Practical Training of Law Students and Law Office Study Programs: Recommendation to Adopt Following Return from Public Comment and Transmit to the Supreme Court**

**RESOLVED**, that the Committee of Bar Examiners recommends that the Board of Trustees adopts the proposed rules regarding the Practical Training of Law Students program, set forth in Attachments A, B, and D;

**RESOLVED**, that the Committee of Bar Examiners recommends that the Board of Trustees adopts the proposed rules regarding the Law Office Study program, set forth in Attachments C and D;

**RESOLVED**, that the Committee of Bar Examiners recommends that the Board of Trustees direct staff to transmit the revised rules the Supreme Court for review and approval.

*Moved by David A. Torres, seconded by Robert S. Brody*

*Ayes – (12)   James A. Bolton, Ph.D., Robert S. Brody, Michael Cao, M.D, James Efting, Kareem Gongora, Dolores Heisinger, Alexander C. Lawrence, Jr., Bethany Peak, Ashley Silva-Guzman, Paul A. Kramer, Vincent Reyes, and David A. Torres*
*Noes – (0)*
*Abstain – (0)*
*Recuse- (0)*
*Absent – (5) Alex H. Chan, Judge Amy Guerra, Larry Kaplan, Esther Lin, and Dr. Don Ajené Wilcoxson*

*Motion carries.*

**C.   Discussion of Office of Admissions Budget and Fee Increases**

**RESOLVED**, that the Committee of Bar Examiners recommends a break-even, tiered approach (noted as Committee of Bar Examiners Rec 2) when assessing fee increases.  This recommendation is mindful of minimizing the burden on law student applicants. The Committee recommends that staff report back as they develop a long-term financial plan.

*Moved by David A. Torres, seconded by Robert S. Brody*

*Ayes – (11)   Robert S. Brody, Michael Cao, M.D, Kareem Gongora, Dolores Heisinger, Larry Kaplan, Alexander C. Lawrence, Jr., Bethany Peak, Ashley Silva-Guzman, Paul A. Kramer, Vincent Reyes, and David A. Torres*
*Noes – (0)*
*Abstain – (0)*
*Recuse- (0)*
*Absent – (6) James A. Bolton, Ph.D., Alex H. Chan, James Efting, Judge Amy Guerra, Esther Lin, and Dr. Don Ajené Wilcoxson*

*Motion carries.*

## IV. Educational Standards

**A.   Administrative Updates from Accredited and Unaccredited Law Schools**

Discussion only.

**B.  Action on Major Change: Voluntary Closure of Glendale University College of Law**

Discussion only.

**C.  Review of Probation Progress Report – Peoples College of Law**

**RESOLVED,** that the Committee of Bar Examiners receive and file the probationary reports filed by Peoples College of Law in January, February, and March 2023.

**FURTHER RESOLVED**, that in response to Peoples College of Law's March 2023 letter seeking information as to its compliance status and required actions, that staff transmit to the law school the annotated summary and restatement of the probationary order set forth in Attachments E (amended to be due, EOD, April 4).

**FURTHER RESOLVED**, that Committee direct the law school to take prompt action to establish full compliance and take the actions noted in Attachment E, as well as any other steps necessary to avoid noncompliance with any other Rule or Guideline, and to provide an update and documentation in its April 2023 progress report. If the law school cannot document compliance in a particular area, the law school must provide an explanation and detailed, documented timeline and action plan as to when compliance is expected to be achieved.

**FURTHER RESOLVED**, that Peoples College of Law must clearly and fully document compliance with Rule 4.241 and California Business and Professions Code section 6061 in its April 2023 progress report by providing evidence that the procedures set forth in California Business and Professions Code 6061 and Rule 4.241 were followed or that refunds were issued. Failure to do so will be taken as evidence of noncompliance and the Committee may move to terminate the law school's registration.

*Moved by Robert S. Brody, seconded by Alexander C. Lawrence, Jr.*

*Ayes – (11)   James A. Bolton, Ph.D., Robert S. Brody, Michael Cao, M.D, James Efting, Kareem Gongora, Dolores Heisinger, Bethany Peak, Ashley Silva- Guzman, Paul A. Kramer, Vincent Reyes, and David A. Torres*
*Noes – (0)*
*Abstain – (0)*
*Recuse- (2) Larry Kaplan , Alexander C. Lawrence, Jr.,*
*Absent – (4) Alex H. Chan, Judge Amy Guerra, Esther Lin, and Dr. Don Ajené Wilcoxson*

*Motion carries.*

## V. Moral Character

**A.  Action on Recommendation to Adopt Changes to the Admissions Rules Pertaining to Moral Character: Return from Public Comment**

**RESOLVED**, that the Committee of Bar Examiners recommends that the Board of Trustees adopt the rule revisions set forth in Attachments B and C and request approval of the rule changes by the Supreme Court.

*Moved by Vincent Reyes, seconded by David A. Torres*

*Ayes – (13)   James A. Bolton, Ph.D., Robert S. Brody, Michael Cao, M.D, James Efting, Kareem Gongora, Dolores Heisinger, Larry Kaplan, Alexander C. Lawrence, Jr., Bethany Peak, Ashley Silva- Guzman, Paul A. Kramer, Vincent Reyes, and David A. Torres*
*Noes – (0)*
*Abstain – (0)*
*Recuse- (0)*
*Absent – (4) Alex H. Chan, Judge Amy Guerra, Esther Lin, and Dr. Don Ajené Wilcoxson*

*Motion carries.*

**B.   Action on Revisions to Admission Rule 4.41: Recommendation to Circulate for Public Comment**

**RESOLVED**, that the Committee of Bar Examiners recommends to the Board of Trustees to circulate the proposed rule set forth in Attachment A for a 60-day public comment period.

*Moved by Dolores Heisinger, seconded by Vincent Reyes*

*Ayes – (13)  James A. Bolton, Ph.D., Robert S. Brody, Michael Cao, M.D, Alex H. Chan,  James Efting, Kareem Gongora, Dolores Heisinger, Larry Kaplan, Alexander C. Lawrence, Jr., Ashley Silva- Guzman, Paul A. Kramer, Vincent Reyes, and David A. Torres*
*Noes – (0)*
*Abstain – (0)*
*Recuse- (0)*
*Absent – (4) Judge Amy Guerra, Esther Lin, Bethany Peak,  and Dr. Don Ajené Wilcoxson*

*Motion carries.*

**VI. Report from Director**

**A.**

**i.  February 2023 California Bar Examination**

Audrey Ching provided a presentation and oral report.

**ii. June 2023 First Year Law Student's Examination**

Audrey Ching provided an oral report.

**iii. July 2023 California Bar Examination**

Audrey Ching provided an oral report.

**iv. Bar Exam Features Experiment**

Amy Nuñez provided an oral report.

**v. Review Schedule for April 21 and June 23, 2023 Committee Meetings**

Amy Nuñez provided a presentation and oral report.

**vi. Provisional Licensure Program**

Amy Nuñez provided an oral report.

**vii. Recent Developments**

Amy Nuñez provided an oral report.

## CLOSED SESSION

## I. CHAIR'S TIME

### A. Report from Counsel (Caroline Holmes and Jean Krasilnikoff)

Report on Pending Litigation [Closed pursuant to Gov. Code §11126(e)(1)
In re Camper on Admissions, Cal. Supreme Court Petition, Case No. S278539
Flinders v. State Bar et al., Sixth Appellate District Ct. of Appeal, Case No.H050562; Ninth
Circuit Ct. of Appeals, Case No. 22-17014
Guinses v. State Bar, DFEH Case No. 202204-16740319
Jahn v. State Bar, DFEH Case No. 202103-12845809
Kohn v. State Bar et al., Ninth Circuit Ct. of Appeals, Case No. 20-17316
Mitchell v. State Bar et al., Cal. Supreme Court Petition, Case No. S278784
Moran v. State Bar, DFEH Case No. 202107-14091306
Pell v. Amy Nuñez, Ninth Cir. Ct. of Appeals, Case No. 23-55188
Piercy v. State Bar, DFEH Case No. 202202-16125312
Tuma v. State Bar, First District Ct. of Appeals., Case No. A161037
Tran v. State Bar, LA County Superior Ct., Case Nos. 22STCP01836; 22STCV16290
Threatened Litigation Concerning Bar Exam Testing Accommodation Requests

*Closed pursuant to Gov. Code §11126(e)(1) and Government Code 11126(c)(1)

### B. Approval of January 27, 2023, Committee of Bar Examiners Closed Meeting Minutes

*Closed pursuant to Bus. & Prof. Code §6026.7(c)(3)-(5) and Gov. Code §11126(c)(1)

## II. Examinations

### A. Action on Pending Testing Accommodation Appeals

*Closed pursuant to Bus. & Prof. Code §6026.7(c)(3), and Gov. Code §11126(c)(1)

8

### III. Operations and Management

#### A. Action on the March 2023 Operation & Management Appeals

*Closed pursuant to Bus. & Prof. Code §6026.7(c)(3) and Gov. Code §11126(c)(1)

### IV. Moral Character

#### A. Report and Discussion of Staff Moral Character Determinations

*Closed pursuant to Bus. & Prof. Code §6026.7(c)(4)

#### B. Action on Moral Character Cases Pending Administrative Review

* Closed pursuant to Bus. & Prof. Code §6026.7(c)(4)

#### C. WITHDRAWN-Report on Status of State Bar Court Decisions

 * Closed pursuant to Bus. & Prof. Code §6026.7(c)(4)

#### D. Report on Status of Pending Moral Character State Bar Court Cases

*Closed pursuant to Bus. & Prof. Code §6026.7(c)(4)

**OPEN SESSION**

The committee returned to open session and reported that there is no action to report from closed session. No further discussion took place in open session.

**ADJOURN**

# EXHIBIT E

## The State Bar
### of California

**OFFICE OF ADMISSIONS**

180 Howard Street, San Francisco, CA 94105                    admissions@calbar.ca.gov

### JULY 2021 BAR EXAM ADMITTANCE TICKET BULLETIN

Applicants taking the California Bar Examination should carefully read this bulletin prior to the first day of the exam, as it contains important information that you will need to know.

**Exam schedule**

The July 2021 bar exam will be offered online and remotely proctored to all applicants. In-person exam administration will be provided to those for whom online remote proctoring is not available and to those with approved testing accommodations that cannot be effectively provided and securely administered in a remote environment. The exam is scheduled to be administered on **Tuesday and Wednesday, July 27 and 28, 2021**.

The July bar exam will have 200 Multistate Bar Exam (MBE) questions, with the essays and performance test on day 1 and the MBE on day 2. Applicants approved to take the Attorneys' Exam will test on day 1 only.

Applicants must use a laptop and must be logged into the system no later than 8:30 a.m. The exam will begin immediately following establishment of the applicant's identity and delivery of instructions. You must be logged into the system no later than 2:00 p.m. for the afternoon session on day 1, and 1:30 p.m. for the afternoon session on day 2. Every session begins with reestablishment of your identity.

Review the schedule and plan accordingly. Keep in mind that each exam session will begin immediately after you enter the password for that session. You should enter the password when you're ready to begin, and no later than the schedule allows. You will have 30-minute breaks between each session and one hour for lunch.

All in-person applicants should arrive no later than 7:30 a.m. The exam will begin immediately following the instructions. You should plan to arrive at least 30 minutes early to check-in and locate your assigned room. Arriving late to the test center will not alter the start time of your exam.

San Francisco Office
180 Howard Street
San Francisco, CA 94105

www.calbar.ca.gov

Los Angeles Office
845 S. Figueroa Street
Los Angeles, CA 90017

Applicants granted extended time may have different schedules, which are communicated to them individually in advance of the exam.

**Exam description**

The California Bar Exam is comprised of the General Bar Exam and the Attorneys' Exam. The General Bar Exam consists of three parts: five essay questions, the MBE, and one Performance Test (PT). The parts of the exam may not be taken separately, and California does not accept the transfer of MBE scores from other jurisdictions. On the first day of the exam, five essay questions and the 90-minute Performance Test is administered. A 90-minute break for lunch will occur between essays 3 and 4. On the second day, the MBE will be administered in four 50-question sessions, 90 minutes each. There will be a 90-minute break for lunch between Part 2 and Part 3 of the MBE.

Applicants with disabilities who are granted extended time accommodations will have slightly different schedules, which will be communicated to them prior to the exam.

July's exam will be scaled and graded as described here. The passing score on the exam is 1390.

The Attorneys' Exam consists of the five essay questions and the PT from the General Bar Exam. An applicant can earn up to 100 raw points on each essay question and up to 200 raw points on the PT. The same methodology as described above will be used to convert the written scores to a 2000-point scale. The score for the Attorneys' Exam is 100 percent based on the written portion. The passing score is 1390.
If an applicant is absent for any portion of the exam, the applicant will be considered as having not taken the exam and their written answers will not be graded, and if the applicant intends to take a future administration of the exam, they will be subject to the same application filing deadlines applicable to first-time applicants, rather than the deadlines applicable to immediate repeaters.

The Committee of Bar Examiners (CBE) judges the validity of the exam, and at its discretion, may determine that the result of any test, any part of any test, or any individual's score is not valid. Should the CBE invalidate any part of the test, or if any individual's test is declared invalid, or for any reason, any part of the test cannot be graded, at its discretion, the CBE may decide to make a pass/fail decision on the basis of the valid portion of the applicant's test product available to the CBE.

2

If you are an attorney applicant and have been approved to take the Attorneys' Exam, you are not permitted to take the MBE. Written notification of an attorney's decision to take the General Bar Exam instead of the Attorneys' Exam, or to take the Attorneys' Exam instead of the General Bar Exam, must be received in the Office of Admissions by the final filing deadline for applications. Requests for changes received after that date will not be processed; applicants must pass the exam selected and approved by the Office of Admissions.

For attorney applicants with disabilities who have been granted accommodations that include an extended day schedule, the number of testing days will be specified in their Testing Accommodations Notice.

**Examination administration rules and policies**

Failure to follow exam rules while the exam is in session will result in notice to the State Bar of California of a violation of exam rules in accordance with the provisions of Title 4, Division 1, Chapter 6 of the Rules of the State Bar of California (Admissions Rules). Conduct that results in a violation of security or disrupts the administration of the exam, which includes but is not limited to having unauthorized items with you during the exam (such as cell phones, digital watches, and timing devices, notes, etc.), writing or typing after time has been called, attempting to cheat or avoid/override the remote proctoring system, leaving the view of the camera while the exam is in session, or ignoring warnings about minimum system requirements that result in gaps in the audio/video recording will result in notice to the State Bar of a violation of exam rules, or in some cases, can lead to a negative referral to the Moral Character Determination unit.

In addition, applicants who are testing in person are expected to maintain a professional attitude toward other applicants, staff, proctors, and other exam personnel at all times. Behavior that is abusive or disruptive may result in dismissal from the test center and will be reported to the State Bar or the CBE for appropriate action. It is expected that all applicants will demonstrate integrity, honor, and ethical behavior during all exams administered by the State Bar of California.

The remote-proctored exam will be continuously monitored by artificial intelligence and human proctors, and any and all anomalies or suspicious behavior will be flagged accordingly. Flagged video files will be reviewed by the State Bar, and conduct violations determined to be serious will result in strict sanctions. Sanctions may include but are not limited to a zero for the flagged exam session, a zero for the entire exam, and a negative impact on your Moral Character Determination. For less

serious conduct and rule violations, the State Bar or the CBE may take whichever action it deems appropriate.

Applicants may not wear hats, caps, hoods, or any other type of headwear during the exam. The CBE, however, will consider petitions filed by applicants seeking exemptions from that policy, which would permit them to wear headwear due to religious beliefs while in a secure exam test center or while testing remotely. Such petitions must be submitted online through the Applicant Portal no later than the final deadline for filing testing accommodations petitions. Upon arrival at an in-person test center, applicants must be prepared to show a letter from the CBE that permits them to wear the headwear in the exam room. The headwear may be subject to inspection. Applicants attempting to enter the test center wearing headwear who do not have a letter from the CBE authorizing them to do so will be issued a Chapter 6 Notice and will be asked to remove the headwear. Letters allowing headwear for applicants testing remotely will be kept on file with the State Bar and compared against the applicant's uploaded video file to determine whether a violation has occurred.

**Only the following items are allowed in the exam areas without prior approval. All items are subject to inspection at the in-person test centers**:
1. Valid government-issued photo ID
2. Eyeglasses (no cases or sunglasses)
3. Foam earplugs (cannot be wireless and must not be connected to any mechanism or device)
4. Menstrual products
5. Inhalers
6. Diabetes-related items and equipment (does not include food or drinks)
7. Eyedrops in single-use vials
8. One back support (without a cover)
9. One orthopedic cushion (without a cover)
10. One standard-size pillow (without a case)
11. One footrest
12. Splints, braces, casts, crutches, wheelchair
13. Hearing aids
14. TENS units
15. Disability-related items that have been approved through the testing accommodations petition process

Online applicants will be allowed the following items during the PT session only:
- Nondigital pens
- Nonmechanical pencils (with eraser incorporated; no separate erasers)

- Pen-style highlighters
- Eight pages of physical scratch paper no larger than 8.5" x 11" (both sides must be blank); Applicants will be required to hold up to the camera the front and back of each piece of scratch paper (Failure to do so will result in the issuance of a Chapter 6 Notice of Violation)
  The following laptop accessories are allowed:
- Separate keyboard
- Mouse (wired or wireless)
- Laptop riser/stand no higher than 4"
- Solid color mouse pad with no writing on it

**Additional instructions for in-person test takers**

Applicants who will be testing in person are allowed to have the following items in addition to those listed above:

1. The admittance ticket with no writing on it (detach ticket from instructions above prior to arrival at the test center)
2. Silent analog watches
3. Prescription medications (does not include cough drops)
4. Cash (must not have extraneous writing on it)
5. Credit/debit cards that might be needed for the lunch breaks
6. Keys
7. Face masks (with no patterns or extraneous writing on them)
8. Protective gloves
9. Applicants who are handwriting or have certain testing accommodations may be allowed the following beyond the PT session: Nondigital pens (standard blue or black ink), Nonmechanical pencils (with eraser incorporated; no separate erasers), Pen-style highlighters (must not be used on answers), Nondigital timers and nondigital clocks measuring 4"x 4" or smaller.

Applicants who are handwriting or have certain testing accommodations may be allowed the following beyond the PT session: nondigital pens (standard blue or black ink), nonmechanical pencils (with eraser incorporated; no separate erasers), pen-style highlighters (must not be used on answers), nondigital timers and nondigital clocks measuring 4"x 4" or smaller.

Applicants who will be handwriting their exam answers must bring their own standard blue or black ink ballpoint pens. Applicants must also bring their own pencils for the multiple-choice portion of the exam (several sharpened pencils are recommended). Mechanical pencils are not permitted. Pencil sharpeners and separate erasers will not be allowed into the exam room.

Please note that, whether testing remotely or in person, applicants cannot have wallets, tissues, lip balm, cough drops/throat lozenges, gum, candy, or other food or drinks in the exam room. Water and tissues will be available nearby at the in-person test centers. Applicants testing in-person with an online format because of extenuating circumstances will not have access to these items during testing; only during breaks.

During the in-person MBE sessions, the items listed above are allowed in the exam room, **except** pens, highlighters, back supports, orthopedic cushions, pillows, bookstands or footrests, and laptops or laptop accessories. If you need any of these items due to a disability, you must request them through the timely filing of a Testing Accommodations Petition.

If unauthorized items are brought into the exam room, either intentionally or inadvertently, they will be confiscated or noted, and the applicant will receive a Chapter 6 Notice and possibly additional sanctions imposed by the State Bar or the CBE. In accordance with the CBE's policies, applicants will receive a score of zero for any session during which they are found to have brought an unauthorized electronic device, such as a cell phone, digital watch or timer, or activity tracker device (e.g., Fitbit) into the exam room, as well as any additional sanctions the State Bar or the CBE, may impose.

**General instructions: Remote-proctored administration**

The system will prompt you to establish your identity at the beginning of each session (at the start and after each break). However, if the system cannot confirm your identity, you will be able to proceed with the exam, but your video will be reviewed later.

The following conduct will be prohibited:

1. Leaving the view of the webcam outside of scheduled breaks.
2. Any attempt to bypass or avoid the remote proctoring mechanisms and protocols, or to obtain or receive assistance on the exam.
3. Individuals (other than the applicant) entering the exam room.
4. Possession of cell phones or other electronic devices, including a tablet or additional computers in the exam room, or connected remotely to any other devices or equipment in the exam room.
5. Possession of notes, study aids, or other papers or exam resources in the exam room, including scratch paper (digital scratch paper will be provided). An exception is made for scratch paper only for the PT session and only under the specified terms and conditions.

6. Possession of any digital timers, watches, or clocks in the exam room (the exam software has a built-in timer that allows applicants to set timed reminders).
7. Possession of books of any kind in the exam room within view or access during the exam session.
8. Possession of food or beverages in the exam room, including but not limited to coffee and water (unless you have been granted a testing accommodation that allows for these items).
9. Smoking in the exam room.
10. Possession of any item(s) other than the allowed items listed in the Admittance Bulletin in the exam room (unless you have been granted a testing accommodation that allows for these items).
11. Possession of any radios, stereos, or other devices/equipment (including smart home devices such as Google Home or Alexa) that can make audible sounds in the exam room. Any such items must be turned off at all times during the exam and scheduled breaks.

If items other than those allowed are detected during the exam, you will be flagged by the system and a corresponding sanction may be issued after review by State Bar staff.

You are not allowed to make notes from memory prior to the start of the exam session. Laptop users may not access any notes or other documents at any point during the exam. Digital scratch paper will be available in the Examplify program.

The exam is electronically timed, and applicants can set a timer in the system. Applicants are encouraged to keep track of their own time.
Please note that extra time is not granted to any individual applicant for any reason. If you attempt to continue completing the exam after the session has ended, you will receive a Chapter 6 Notice.

You should use the restroom before the start of each exam session. You will not be permitted to use the restroom or leave the view of the web camera during the exam session.
If you leave the exam area during the exam session, you will be issued a Chapter 6 Notice, and you will receive a score of zero for the entire exam session.

**No smoking: In-person and remote exam instructions**

**Smoking is not allowed during any exam session, both in-person and remote. Smoking is prohibited at test centers located in buildings that do not allow smoking**

7

**in accordance with city ordinance.** Regardless of whether smoking is prohibited, any applicant who exits the secure exam area in order to smoke while the exam is in progress will not be allowed to re-enter to complete the examination.

**Laptop computer users**

After you have been notified that your admittance ticket is available, you are eligible to have your laptop registered for use during the exam. You must download and install the required security software onto your laptop (Examplify with ExamID and Exam Monitor), and you must complete the registration process by **July 16, 2021**, with the completion of both mock exams. Complete the following steps to make sure your laptop is ready for exam day:

1. Download the required security software (Examplify) onto your computer and register with ExamSoft.
2. Take the two required mock exams and upload the answer files by **July 16, 2021**.
3. Download the 10 bar exam answer files between **July 20 and July 23, 2021**. **Confirmation**: After you have downloaded the 10 exam files, you will be advised via email by ExamSoft that you have done so. Those 10 confirmation emails are the only certification that your laptop is ready for the exam. You may also check your status and view your download/upload history online by launching Examplify from your laptop and confirming you have the 10 downloads. Log in using the Exam Takers box, click the Exam History button to review your record, and confirm that you have downloaded the exam and mock exam files, and have uploaded the mock exam answer files. **You should have a total of 10 answer files for the July 2021 California Bar Exam.**

It is the responsibility of applicants using laptops to timely upload their exam files containing their answers to the five essay questions, one Performance Test, and four parts of the multiple-choice exam. Applicants must also timely upload their video files for each exam session, for a total of 10 video files. Applicants who fail to upload their answer and video files by the published deadline will have a deduction of 10 scaled points taken from their scaled score. Applicants who fail to upload their answer and video files within two weeks of the published deadline will be given a grade of zero for each answer that is not received by the State Bar Office of Admissions by the published deadline. Applicants are expected to comply with the published deadlines; there are no waivers of the deadlines or the sanctions that will be imposed as a result of applicants' failure to upload their exam and video files.

**General instructions: In-person administration**

1. Your admittance ticket contains your applicant number, your file number, and your NCBE number. Do not write anything on the ticket. You will be required to show your ticket to the proctor when you enter the test center. You must keep it in your possession throughout the exam.

2. If items other than those allowed are brought to the test center, you will be required to leave them at your own risk outside of the exam area. The State Bar, CBE, Office of Admissions staff, and proctors assume no responsibility for the safekeeping of items that you bring to the test center. You are not permitted access to those items while the exam is in session.

3. You should bring any small permitted personal items (e.g., prescription medication, foam earplugs, pens, etc.) into the exam area in a small, clear plastic bag. Larger items, such as pillows, do not need to fit into the clear plastic bag that holds your smaller items.

4. Proctors will provide you with seating information upon your arrival at the test center.

5. Upon arrival, you will be provided with a badge that will be your identification credential during exam administration, which you may be required to show at any time. The badge must be fastened so it can be easily seen by the proctors. You will be told to relocate the badge if it is not placed appropriately. The badge must be left at your seat during the lunch break.

6. At some time during exam administration, you may be required to provide your fingerprints. If you refuse to provide the required fingerprints, you will be issued a Chapter 6 Notice.

7. During the exam, you will be required to show a valid government-issued photo ID (e.g., Driver's License, California Identification Card, or Passport) for the purpose of identity verification. You must carry this photo ID card at all times during the exam.

8. Those applicants that are handwriting their answers will be instructed to write their applicant number, name, and signature in the upper right-hand section of each of their answer book covers at the beginning of each written exam session (essay and PT). Do not write notes, outlines, answers, time schedules, or make any marks on the inside or outside of your answer book covers. Prior to grading, your personal information will be removed after a code number has been assigned. Thereafter, answers are identified by a code number only; nothing about an individual applicant is known to the graders.

9. You are not allowed to make notes from memory prior to the start of the exam session. If you are using your laptop, you may not access any notes or other documents on your computer after you have entered the secure examining area. Applicants using laptops will have access to virtual scratch paper. Physical scratch paper is not permitted during any of the Essay Question sessions or during the MBE

9

sessions of the exam. An exception is made for physical scratch paper only for the PT session of the exam and only under the specified terms and conditions. Some applicants with documented disabilities requiring them to have physical scratch paper will be accommodated. Nothing written on scratch paper will be graded. You must not make notes or write anything on your admittance ticket. If writing is found on your admittance ticket, the ticket will be confiscated, and you will be issued a Chapter 6 Notice.

10. If you are handwriting your answers, there is a separate answer book for each written question, and you must be certain that the answer to Question No. 1 is written in the book for Question No. 1, etc. Answers written in a wrong answer book or typed in the wrong answer window while using Examplify, or more than one answer typed in the text box screen while using Examplify, require special handling and could delay the grading of an applicant's answer.

11. If you handwrite your exam answers and need additional lined paper to write your answers during the exam, raise your hand and a proctor will provide you with what you need.

12. If you are handwriting, you should do so as legibly as possible. A ballpoint pen with standard blue or black ink must be used to write your answers. Answers to the essay and PT questions written in pencil are not acceptable. Only nonmechanical pencils may be used for the MBE portion of the exam. Neither highlighters nor white-out may be used on your answers to the essay and PT questions.

13. If you are testing with paper MBE exam materials, all answers to the MBE portion of the exam must be marked on the Scantron answer sheets provided. If you have circled or otherwise marked your answers in the question booklet, extra time to transfer answers to the answer sheet will not be granted. Only answers properly marked on the answer sheets will be scored.

14. If you are testing with paper exam materials, exam questions, and used scratch paper may not be taken out of the exam room. After completing each session of the exam, the exam questions and used scratch paper must be placed in the envelope designated for that purpose.

15. If you handwrite your exam answers, it is your responsibility to turn in your written exam answers to the proctors. If you leave the test center with your answers, the answers will not be graded.

16. The exam is electronically timed, and you are encouraged to keep track of your own time since wall clocks are not provided. Laptop users will have the ability to set two timers while in the exam session.

17. Timing devices (i.e., watches and clocks) that are allowed to be brought into the exam test centers are to be used solely for the determination of the passage of time. They cannot have a digital display, must be absolutely silent, and cannot be larger than 4"x4". Timing devices that are digital, programmable, and/or make noise are

not permitted. If found, they will be confiscated, and the applicant will receive a Chapter 6 Notice.

18. Writing and typing of answers must be completed when time is called. Please note that extra time is not granted to any individual applicant for any reason. If you attempt to write anything after time has been called, you will receive a Chapter 6 Notice.

19. Restrooms and water will be available at each test center. Applicable to applicants who are NOT required to use the online remote-proctored version of the exam: You should use the facilities before taking your seat so you have time to go over the instructions prior to the start of each session. Extra time to use the restroom will not be granted. You will not be permitted to use the restroom or leave your seat during the last several minutes of the exam session (5 to 15 minutes depending on the session). After time is called, you will not be permitted to use the restroom or leave your seat until all materials are collected and inventoried. If you fail to remain seated after being advised to do so, or while the exam materials are being collected and inventoried, you will receive a Chapter 6 Notice. Applicable to applicants who are required to use the online remote-proctored version of the exam: You should use the restroom before taking your seat at the start of the exam session. If you leave the view of the webcam at any time while the exam is in session, you will be flagged by the AI proctor and you will receive a Chapter 6 Notice, as well as a score of zero for the exam session.

20. If you leave the secure exam area during the exam session, you will not be permitted to return for the purpose of completing your exam answers. For applicants who are required to use the online remote proctored version of the exam, any answer typed thereafter will not be graded if you leave the secure exam area during the exam session.

21. The proctors' chief function is to proctor the exam; however, if asked, the proctors will attempt to assist with any problems that may arise.

22. If there is an emergency of any kind, you should remain seated and wait for instructions on how to proceed.

**In-person test center environment**

While every effort will be made to keep the environment of the test center comfortable and quiet, there are times when events, conditions, or actions of third parties occur that are beyond the control of the State Bar or the CBE. For instance, the temperature of the test center may fluctuate due to the weather or the test center's cooling/heating equipment; applicants should be prepared for either warm or cold temperatures. Efforts will be made to keep the test center quiet, but there may be forces outside the control of the State Bar or the CBE that prevent such an environment from being guaranteed. You should come prepared to accommodate

noises, such as those made by other applicants taking the exam, proctors carrying out their duties, people entering/exiting the exam room, equipment inside or outside the test center that may make sounds while operating, other meetings or conventions in the same facility, etc. Earplugs of the type specified earlier are strongly recommended.

## Exam attendance policy

If you do not attend or are unable to complete a required, scheduled exam session, you will be considered a partial exam taker and your exam will not be graded. For instance, if you are taking the exam in person, if you are absent for the Tuesday morning session, you will not be allowed to take any remaining sessions of the exam. If you are absent for any portion of the exam, you will be considered as having not taken the exam and your written answers will not be graded. If you intend to take a future administration of the exam, you will be subject to the same application filing deadlines applicable to first-time applicants rather than the deadlines applicable to immediate repeaters, if any. Applicants must make a good faith attempt to complete each session of the exam for which they are present. Failure to do so may lead to receipt of a Chapter 6 Notice and being prohibited from attending any remaining exam sessions.

## Late login to the system

Applicants testing in-person and arriving at the test center after one hour of testing time has elapsed will not be permitted to enter the test center for any portion of the exam.
Applicants testing remotely and logging in after 10 minutes of testing time have elapsed will not be permitted to begin the exam session that has started and will be locked out of the question in progress. Any answers to questions in subsequent exam sessions will not be graded or scored.

## Address change

Applicants are encouraged to notify the Office of Admissions of a change of address as soon as possible. Applicants are able to update their admissions file with the new address by accessing their account through the Applicant Portal.

## Moral Character

The Admissions Rules require a positive moral character determination before the CBE may recommend that an applicant be admitted to practice law. The process is

initiated by filing an Application for Determination of Moral Character. The processing of these applications generally takes a minimum of 180 days and sometimes longer to complete. If you have not already filed a moral character application, you should do so now to avoid delays in your admission to practice law if you are successful on the California Bar Exam. The application must be filed online through your Applicant Portal.

## Admittance ticket

Applicants will receive an email alerting them when admittance tickets are ready to be printed. The admittance ticket can be located in the exam case record through the Applicant Portal. Admittance tickets only need to be printed for applicants testing in person.

## Further communication

For particular questions regarding your status or the other requirements for admission, you should contact the State Bar's Office of Admissions by sending an email directly from your Applicant Portal. If you need to contact the office by phone, please use one of the following numbers:
**Los Angeles**
845 South Figueroa Street
Los Angeles, CA 90017
213-765-1500
**San Francisco**
180 Howard Street
San Francisco, CA 94105
415-538-2300

## California Bar Exam results

Results from the July 2021 administration of the California Bar Exam will be available to applicants through their Applicant Portal on November 12, 2021, at 6:00 p.m. Communications regarding exam results will be sent to the applicant's contact information on file. Please note that applicants will not be able to change their contact information the week before the exam results are released.

You will be able to determine whether your name appears on the pass list through the State Bar website at 6:00 p.m. (Pacific Time) on November 12, 2021. You will need your file number and applicant number, which are listed on the admittance tickets and ID badges, to access the pass list.

13

# EXHIBIT F

**The State Bar**
*of California*

**OFFICE OF ADMISSIONS**

180 Howard Street, San Francisco, CA 94105

admissions@calbar.ca.gov

## JULY 2022 BAR EXAM ADMITTANCE TICKET BULLETIN

Applicants taking the California Bar Examination should carefully read this bulletin prior to the first day of the exam, as it contains important information that you will need to know.

### Schedule of the examination

The July 2022 bar exam will be administered in person. **The General Bar Examination will be administered on Tuesday and Wednesday, July 26 and 27, 2022. The Attorneys' Examination will be administered on Tuesday, July 26, 2022.** Each day, there will be a morning and an afternoon session. Applicants using laptop computers must be seated no later than 8:20 a.m. All applicants must be seated no later than 8:30 a.m. The examination will begin immediately following the instructions. You should plan to arrive at least 30 minutes early to check in and locate your assigned section or room. Arriving late to the test center will not alter the start time of your exam.

The afternoon sessions generally begin at 1:30 p.m.; instructions will begin promptly 15 minutes before the scheduled start time. An announcement will be made at the end of the morning session advising you when you are expected to report for the afternoon session. The examination is scheduled to conclude on Tuesday at approximately 5:30 p.m. and on Wednesday at approximately 5:00 p.m. Applicants granted extended time may have different schedules, which are communicated to them individually in advance of the examination.

### Description of the examination

The California Bar Examination is comprised of the General Bar Exam and the Attorneys' Exam. The General Bar Exam consists of three parts: five essay questions, the MBE, and one Performance Test (PT). California does not accept the transfer of MBE scores from other jurisdictions.

On Tuesday, applicants will have three hours during the morning session to answer three essay questions; during the afternoon session, applicants will have three hours and 30 minutes to answer two essay questions and one PT. Each essay question is designed to be answered in one hour and the PT is designed to be completed in 90 minutes. The MBE will be administered on Wednesday.

On the written section of the exam, applicants are initially graded on a basis of 700 maximum possible raw points. An applicant can earn up to 100 raw points on each of the five essay questions and up to 200 raw points on the PT. The scores obtained on the written section of the

San Francisco Office
180 Howard Street
San Francisco, CA 94105

www.calbar.ca.gov

Los Angeles Office
845 S. Figueroa Street
Los Angeles, CA 90017

exam are then translated to the 2000-point MBE scale. An applicant's total score is the scaled MBE score multiplied by .50 plus the converted score on the written section multiplied by .50. Scaling ensures the two portions of the exam carry the relative weights assigned to them: written (50 percent) and MBE (50percent). The passing score on the exam is 1390.

The Attorneys' Exam consists of the five essay questions and the PT from the General Bar Exam. An applicant can earn up to 100 raw points on each essay question and up to 200 raw points on the PT. The same methodology as described above will be used to convert the written scores to a 2000-point scale. The total scale score for the Attorneys' Exam is based on the written portion. The passing score is 1390.

The Committee of Bar Examiners (CBE) judges the validity of the exam and, at its discretion, may determine that the result of any test, any part of any test, or any individual's score is not valid. Should the CBE invalidate any part of the test, or if any individual's test is declared invalid, or for any reason any part of the test cannot be graded, at its discretion the CBE may decide to make a pass/fail decision on the basis of the valid portion of the applicant's test product available to the CBE.

If you are an attorney who has been approved to take the Attorneys' Examination (1-day exam), the words "1-Day Exam" should be printed on your admittance ticket. If those words are not printed on your admittance ticket, you are scheduled to take the 2-day General Bar Examination. Requests to change from the 1-day Attorneys' Examination to the 2-day General Bar Examination, or vice versa, cannot be honored after the final filing deadline for applications. Requests for changes received after that date will not be processed; applicants must pass the exam selected and approved by the Office of Admissions.

For attorney applicants with disabilities who have been granted accommodations that include an extended day schedule, the number of testing days will be specified in their Testing Accommodations Notice. Please review that schedule carefully.

**Examination administration rules and policies**

Failure to follow oral and written instructions while the examination is in session will result in notice to the State Bar of California of a violation of examination rules in accordance with the provisions of Title 4, Division 1, Chapter 6 of the Rules of the State Bar of California (*Admissions Rules*). Conduct that results in a violation of security or safety or disrupts the administration of the examination, which includes, but is not limited to, bringing unauthorized items into the examination room (such as cell phones, notes, etc.), writing or typing after time has been called, looking at another applicant's papers, talking while the examination is in session, and being abusive to other applicants, staff, proctors and/or other examination personnel, will result in notice to the State Bar of a violation of examination rules or, in some cases, dismissal from the examination test center. Applicants are expected to maintain a professional attitude toward other applicants, staff, proctors, and other examination personnel at all times. Behavior that is disruptive will be reported to the State Bar for whatever action it deems appropriate.

Applicants may not wear hats, caps, hoods, or any other type of headwear during the exam unless they petitioned for approval by June 1. Upon arrival at the test center, applicants must

be prepared to show a letter from the State Bar that permits them to wear the headwear in the exam room. The headwear may be subject to inspection. Applicants attempting to enter the test center wearing headwear who do not have a letter from the State Bar authorizing them to do so will be issued a Chapter 6 Notice and will be asked to remove the headwear.

**Only the following items are allowed in the exam areas without prior approval. All items are subject to inspection at the test centers**:

1. Government-issued ID
2. The admittance ticket with no writing on it
3. Silent analog watches
4. Prescription medications (does not include cough drops)
5. Cash (must not have extraneous writing on it)
6. Credit/debit cards that might be needed for the lunch breaks
7. Keys
8. Face masks without valves (with no patterns or extraneous writing on them)
9. Protective gloves (latex or rubber only)
10. Nondigital pens (standard blue or black ink), nonmechanical pencils (with eraser incorporated; no separate erasers), pen-style highlighters (must not be used on answers), rulers and paper clips
11. Nondigital timers and nondigital clocks measuring 4"x 4" or smaller.
12. Eyeglasses (no cases or sunglasses)
13. Foam earplugs (cannot be wireless and must not be connected to any mechanism or device)
14. Menstrual products
15. Inhalers
16. Diabetes-related items and equipment (does not include food or drinks)
17. Eyedrops in single-use vials
18. One back support (without a cover)
19. One orthopedic cushion (without a cover)
20. One standard-size pillow (without a case)
21. One bookstand
22. One footrest
23. Splints, braces, casts, crutches, wheelchair
24. Hearing aids
25. TENS units
26. Disability-related items that have been approved through the testing accommodations petition process
27. Separate keyboard, mouse (wired or wireless), laptop riser/stand no higher than 4 inches and a solid color mouse pad with no writing on it.

**During the MBE sessions, the items listed above are allowed in the exam room, except pens, highlighters, back supports, orthopedic cushions, pillows, bookstands or footrests, and laptops or laptop accessories. If you need any of these items due to a disability, you must request them through the timely filing of a Testing Accommodations Petition.**

3

Applicants who will be handwriting their exam answers, or who are required to handwrite in the event of a laptop/software malfunction, must bring their own standard blue or black ink ballpoint pens. Applicants must also bring their own pencils for the MBE portion of the exam (several sharpened pencils are recommended). **Mechanical pencils are not permitted.** Pencil sharpeners and separate erasers will not be allowed into the exam room.

Please note that applicants **cannot** bring wallets, tissues, lip balm, cough drops/throat lozenges, gum, candy, or other food or drinks in the exam room. Water and tissues will be available nearby at the test centers.

If unauthorized items are brought into the exam room, either intentionally or inadvertently, they will be confiscated or noted, and the applicant will receive a Chapter 6 Notice and possibly additional sanctions imposed by the State Bar or the CBE. In accordance with the CBE's policies, applicants will receive a score of zero for any session during which they are found to have brought an unauthorized electronic device, such as a cell phone, digital watch or timer, or activity tracker device (e.g., Fitbit) into the exam room, as well as any additional sanctions the State Bar or the CBE may impose.

**Test center environment**

While every effort will be made to keep the environment of the test center comfortable and quiet, there are times when events, conditions, or actions of third parties occur that are beyond the control of the State Bar or the CBE. For instance, the temperature of the test center may fluctuate due to the weather or the test center's cooling/heating equipment; applicants should be prepared for either warm or cold temperatures. Efforts will be made to keep the test center quiet, but there may be forces outside the control of the State Bar or the CBE that prevent such an environment from being guaranteed. You should come prepared to accommodate noises, such as those made by other applicants taking the exam, proctors carrying out their duties, people entering/exiting the exam room, equipment inside or outside the test center that may make sounds while operating, other meetings or conventions in the same facility, etc. Earplugs of the type specified earlier are strongly recommended.

**General instructions**

1. Your admittance ticket contains your applicant number, your file number, and your NCBE number. **Do not write anything on the ticket.** You will be required to show your ticket to the proctor when you enter the test center. You must keep it in your possession throughout the exam.
2. If items other than those allowed are brought to the test center, you will be required to leave them at your own risk outside of the exam area. The State Bar, CBE, Office of Admissions staff, and proctors assume no responsibility for the safekeeping of items that you bring to the test center. You are not permitted access to those items while the exam is in session.
3. You should bring any small permitted personal items (e.g., prescription medication, foam earplugs, pens, etc.) into the exam area in a small, clear plastic bag. Larger items, such as pillows, do not need to fit into the clear plastic bag that holds your smaller items.

4. Signs will be posted showing seating assignments by applicant numbers. The number can be found on your admittance ticket. You must occupy the same seating space throughout the examination.

5. Upon arrival at your seat, you will be provided with a badge that will be your identification credential during the exam administration, which you may be required to show at any time. The badge must be fastened so it can be easily seen by the proctors. You will be told to relocate the badge if it is not placed appropriately. The badge must be left at your seat during the lunch break.

6. At some time during exam administration, you may be required to provide your fingerprints. If you refuse to provide the required fingerprints, you will be issued a Chapter 6 Notice.

7. During the exam, you will be required to show a valid government-issued photo ID (e.g., driver's license, California Identification Card, or passport) for the purpose of identity verification. You must carry this photo ID card at all times during the exam.

8. At the beginning of each written (essays and PT) session of the examination, you will be instructed to write your applicant number, name, and signature in the upper right-hand section of each of your answer book covers. Do not write notes, outlines, answers, time schedules or make any marks on the inside or outside of your answer book covers. The answer book covers are used for administrative purposes only. Your personal information will **not** be provided to any graders. Applicant answers are identified by a code number **only**; nothing about an individual applicant is known to the graders.

9. You are not allowed to make notes from memory prior to the start of the examination session. If you are using your laptop computer, you may not access any notes or other documents on your computer after you have entered the secure examining area. Scratch paper will be distributed for each written session of the examination. Scratch paper is not permitted during the MBE portion of the examination. **You must not make notes or write anything on your admittance ticket. If writing is found on your admittance ticket, the ticket will be confiscated, and you will be issued a Chapter 6 Notice.**

10. If you are handwriting your answers, there is a separate answer book for each written question, and you must be certain that the answer to Question No. 1 is written in the book for Question No. 1, etc. Answers written in a wrong answer book or typed in the wrong answer window while using Examplify, or more than one answer typed in the text box screen while using Examplify, require special handling and could delay the grading of an applicant's answer.

11. If you need additional scratch paper or lined paper to write your answers during the examination, raise your hand and a proctor will provide you with what you need. Nothing written on scratch paper will be graded.

12. If you are handwriting, you should do so as legibly as possible. A ballpoint pen with standard blue or black ink must be used to write your answers. Answers to the essay and PT questions written in pencil are not acceptable. Only nonmechanical, soft lead #2 pencils may be used for the MBE portion of the exam. Neither highlighters nor white-out may be used on your answers to the essay and PT questions.

13. All answers to the MBE portion of the exam must be marked on the Scantron answer sheets provided. If you have circled or otherwise marked your answers in the question

booklet, extra time to transfer answers to the answer sheet will not be granted. Only answers properly marked on the answer sheets will be scored.

14. Exam questions and used scratch paper may not be taken out of the exam room. After completing each session of the exam, all exam questions and used scratch paper must be placed in the envelope designated for that purpose.

15. If you handwrite your exam answers or any part thereof, it is your responsibility to turn in your written exam answers to the proctors. If you have an answer that is partially handwritten because you were unable to complete your answer using your laptop, you must ensure that you complete and submit the form provided by the proctor, which will alert the Grading Department that you have an answer partially handwritten and partially uploaded. You cannot leave the test center with any exam materials, including your answers.

16. The exam is electronically timed, and the official time is kept by the announcer. However, you are allowed to keep track of your own time since wall clocks are not provided. During the instructions at the beginning of each session, you will be advised of the courtesy time warnings that will be given. Any failure on the part of the announcer to give the planned warnings will not affect the outcome of the exam or the grading process, and no extra time or other consideration will be granted.

17. Timing devices (i.e., watches and clocks) that are allowed to be brought into the exam test centers are to be used solely for the determination of the passage of time. They cannot have a digital display, must be silent, and cannot be larger than 4"x 4." Timing devices that are digital, programmable, and/or make noise are not permitted. If found, they will be confiscated, and the applicant will receive a Chapter 6 Notice.

18. Writing and typing of answers must be completed when time is called. Please note that extra time is not granted to any individual applicant for any reason. If you attempt to write anything after time has been called, you will receive a Chapter 6 Notice.

19. Restrooms and water will be available at each test center. You should use the facilities before taking your seat so that you do not miss the instructions prior to the start of each session. Extra time to use the restroom will not be granted. You will not be permitted to use the restroom or leave your seat during the last several minutes of the exam session (5 to 15 minutes depending on the session). After time is called, you will **not** be permitted to use the restroom or leave your seat until all materials are collected and inventoried. If you fail to remain seated after being advised to do so or while the exam materials are being collected and inventoried, you will receive a Chapter 6 Notice.

20. If you are leaving your seat for any reason, you should be considerate of others who are taking the exam. The scraping of chairs, heavy footsteps, or conversation just outside the exam area can disturb others.

21. If you leave the secure exam area during the exam session, you will not be permitted to return for the purpose of completing your exam answers.

22. At laptop computer test centers, laptop computers may not be disconnected from electrical outlets or removed from the exam room while the exam is in session, even if you have completed the exam for that session. You must wait until the exam session has concluded and applicants are dismissed before retrieving your computer.

23. The proctors' chief function is to proctor the exam; however, if asked, the proctors will attempt to assist with any problems that may arise.

24. If there is an emergency of any kind, you should remain seated and wait for instructions on how to proceed.

## No smoking

**Smoking is prohibited at test centers located in buildings that do not allow smoking in accordance with city ordinances.** Regardless of whether smoking is prohibited, any applicant who exits the secure exam area in order to smoke while the exam is in progress will not be allowed to re-enter to complete the exam.

## Laptop computer users

After you have been notified that your admittance ticket is available, you are eligible to have your laptop registered for use during the exam. You must download and install the required security software (Examplify) onto your laptop, and you must complete the registration process by **July 22, 2022**, with the completion of one mandatory mock exam. Complete the following steps to make sure your laptop is ready for exam day:

1. Download the required security software (Examplify) onto your computer and register with ExamSoft.
2. Take the one required mock exam and upload the answer files by **July 22, 2022**. The two actual exam files will be downloaded automatically.

**Confirmation**: After you have downloaded the exam files, you will be advised by email from ExamSoft that you have done so. Those confirmation emails are the only certification that your laptop is ready for the exam. You may also check your status and view your download/upload history online by launching Examplify from your laptop and confirming you have the downloads. Log in using the Exam Takers box, click the Exam History button to review your record, and confirm that you have downloaded the exam and mock exam files, and have uploaded the mock exam answer files. It is the responsibility of applicants using laptops to timely upload their exam files containing their answers to the five essay questions and one Performance Test. Applicants who fail to upload their answer files by the published deadline will have a deduction of 10 scaled points taken from their scaled score. Applicants who fail to upload their answer files within two weeks of the published deadline will be given a grade of zero for each answer that is not received by the State Bar Office of Admissions by the published deadline. Applicants are expected to comply with the published deadlines; there are no waivers of the deadlines or the sanctions that will be imposed as a result of applicants' failure to upload their exam file.

## Exam attendance policy

If you do not attend or are unable to complete a required, scheduled exam session, you will be considered a partial exam taker, and your exam will not be graded. For instance, if you are taking the exam in person, if you are absent for the Tuesday morning session, you will not be allowed to take any remaining sessions of the exam. If you are absent for any portion of the exam, you will be considered as having not taken the exam, and your written answers will not be graded. If you intend to take a future administration of the exam, you will be subject to the same application filing deadlines applicable to first-time applicants rather than the deadlines applicable to immediate repeaters, if any. Applicants must make a good faith attempt to

complete each session of the exam for which they are present. Failure to do so may lead to receipt of a Chapter 6 Notice and being prohibited from attending any remaining exam sessions.

**Late arrival to test center**

Applicants arriving at the test center after one hour of testing time has elapsed will not be permitted to enter the test center for any portion of the exam.

**Address change**

Applicants are encouraged to notify the Office of Admissions of a change of address as soon as possible. Applicants are able to update their admissions file with the new address by accessing their account through the Applicant Portal.

**Moral Character**

The Admissions Rules require a positive moral character determination before the CBE may recommend that an applicant be admitted to practice law. The process is initiated by filing an Application for Determination of Moral Character. The processing of these applications generally takes a minimum of 180 days and sometimes longer to complete. If you have not already filed a moral character application, you should do so now to avoid delays in your admission to practice law if you are successful on the California Bar Exam. The application must be filed online through your Applicant Portal.

**Admittance ticket**

Applicants will receive an email alerting them when admittance tickets are ready to be printed. The admittance ticket can be located in the exam case record through the Applicant Portal.

**Further communication**

For particular questions regarding your status or the other requirements for admission, you should contact the State Bar's Office of Admissions by sending an email directly from your Applicant Portal. If you need to contact the office by phone, please use one of the following numbers:

**Los Angeles**
845 South Figueroa Street
Los Angeles, CA 90017
213-765-1500

**San Francisco**
180 Howard Street
San Francisco, CA 94105
415-538-2300

8

**California Bar Exam results**

Results from the July 2022 administration of the California Bar Exam will be available to applicants through their Applicant Portal on November 10, 2022, at 6:00 p.m. Communications regarding exam results will be sent to the applicant's contact information on file. Please note that applicants will not be able to change their contact information the week before the exam results are released.

You may also determine whether your name appears on the pass list, which will be posted on the State Bar website on November 13, 2022. You will need your file number and applicant number, which are listed on the admittance tickets and ID badges, to access the pass list.

# EXHIBIT G

**The State Bar**
*of California*

**OFFICE OF ADMISSIONS**

180 Howard Street, San Francisco, CA 94105

admissions@calbar.ca.gov

## FEBRUARY 2023 BAR EXAM ADMITTANCE TICKET BULLETIN

Applicants taking the California Bar Examination should carefully read this bulletin prior to the first day of the exam, as it contains important information that you will need to know.

**Schedule of the examination**

The February 2023 bar exam will be administered in person. **The General Bar Examination will be administered on Tuesday and Wednesday, February 21 and 22, 2023. The Attorneys' Examination will be administered on Tuesday, February 21, 2023.** Each day, there will be a morning and an afternoon session. Applicants using laptop computers must be seated no later than 8:20 a.m. All applicants must be seated no later than 8:30 a.m. The examination will begin immediately following the instructions. You should plan to arrive at least 30 minutes early to check in and locate your assigned section or room. Arriving late to the test center will not alter the start time of your exam.

The afternoon sessions generally begin at 1:30 p.m.; instructions will begin promptly 15 minutes before the scheduled start time. An announcement will be made at the end of the morning session advising you when you are expected to report for the afternoon session. The examination is scheduled to conclude on Tuesday at approximately 5:30 p.m. and on Wednesday at approximately 5:00 p.m. Applicants granted extended time may have different schedules, which are communicated to them individually in advance of the examination.

**Description of the examination**

The California Bar Examination is comprised of the General Bar Exam and the Attorneys' Exam. The General Bar Exam consists of three parts: five essay questions, the MBE, and one Performance Test (PT). California does not accept the transfer of MBE scores from other jurisdictions.

On Tuesday, applicants will have three hours during the morning session to answer three essay questions; during the afternoon session, applicants will have three hours and 30 minutes to answer two essay questions and one PT. Each essay question is designed to be answered in one hour and the PT is designed to be completed in 90 minutes. The MBE will be administered on Wednesday.

On the written section of the exam, applicants are initially graded on a basis of 700 maximum possible raw points. An applicant can earn up to 100 raw points on each of the five essay questions and up to 200 raw points on the PT. The scores obtained on the written section of the

San Francisco Office
180 Howard Street
San Francisco, CA 94105

www.calbar.ca.gov

Los Angeles Office
845 South Figueroa Street
Los Angeles, CA 90017

exam are then translated to the 2000-point MBE scale. An applicant's total score is the scaled MBE score multiplied by .50 plus the converted score on the written section multiplied by .50. Scaling ensures the two portions of the exam carry the relative weights assigned to them: written (50 percent) and MBE (50 percent). The passing score on the exam is 1390.

The Attorneys' Exam consists of the five essay questions and the PT from the General Bar Exam. An applicant can earn up to 100 raw points on each essay question and up to 200 raw points on the PT. The same methodology as described above will be used to convert the written scores to a 2000-point scale. The total scale score for the Attorneys' Exam is based on the written portion. The passing score is 1390.

The Committee of Bar Examiners (CBE) judges the validity of the exam and, at its discretion, may determine that the result of any test, any part of any test, or any individual's score is not valid. Should the CBE invalidate any part of the test, or if any individual's test is declared invalid, or for any reason any part of the test cannot be graded, at its discretion the CBE may decide to make a pass/fail decision on the basis of the valid portion of the applicant's test product available to the CBE.

If you are an attorney who has been approved to take the Attorneys' Examination (1-day exam), the words "1-Day Exam" should be printed on your admittance ticket. If those words are not printed on your admittance ticket, you are scheduled to take the 2-day General Bar Examination. Requests to change from the 1-day Attorneys' Examination to the 2-day General Bar Examination, or vice versa, cannot be honored after the final filing deadline for applications. Requests for changes received after that date will not be processed; applicants must pass the exam selected and approved by the Office of Admissions.

For attorney applicants with disabilities who have been granted accommodations that include an extended day schedule, the number of testing days will be specified in their Testing Accommodations Notice. Please review that schedule carefully.

**Examination administration rules and policies**

Failure to follow oral and written instructions while the examination is in session will result in notice to the State Bar of California of a violation of examination rules in accordance with the provisions of Title 4, Division 1, Chapter 6 of the Rules of the State Bar of California (*Admissions Rules*). Conduct that results in a violation of security or safety or disrupts the administration of the examination, which includes, but is not limited to, bringing unauthorized items into the examination room (such as cell phones, notes, etc.), writing or typing after time has been  called, looking at another applicant's papers, talking while the examination is in session, and  being abusive to other applicants, staff, proctors and/or other examination personnel, will  result in notice to the State Bar of a violation of examination rules or, in some cases, dismissal  from the examination test center. Applicants are expected to maintain a professional attitude  toward other applicants, staff, proctors, and other examination personnel at all times. Behavior  that is disruptive will be reported to the State Bar for whatever action it deems appropriate.

Applicants may not wear hats, caps, hoods, or any other type of headwear during the exam unless the headwear is for religious purposes. Religious headwear (i.e., hijabs, yarmulkes, etc.)

may be subject to inspection, if such inspection is required in order to verify the identity of the applicant or if there is suspected cheating.

**Only the following items are allowed in the exam areas without prior approval. All items are subject to inspection at the test centers:**

1. Government-issued ID
2. The admittance ticket with no writing on it
3. Silent analog watches
4. Prescription medications (does not include cough drops)
5. Cash (must not have extraneous writing on it)
6. Credit/debit cards that might be needed for the lunch breaks
7. Keys
8. Face masks without valves (with no patterns or extraneous writing on them)
9. Protective gloves (latex or rubber only)
10. Nondigital pens (standard blue or black ink), nonmechanical pencils (with eraser incorporated; no separate erasers), pen-style highlighters (must not be used on answers), rulers and paper clips
11. Nondigital timers and nondigital clocks measuring 4"x 4" or smaller.
12. Eyeglasses (no cases or sunglasses)
13. Religious headwear
14. Foam earplugs (cannot be wireless and must not be connected to any mechanism or device)
15. Menstrual products
16. Inhalers
17. Diabetes-related items and equipment (does not include food or drinks)
18. Eyedrops in single-use vials
19. One back support (without a cover)
20. One orthopedic cushion (without a cover)
21. One standard-size pillow (without a case)
22. One bookstand
23. One footrest
24. Splints, braces, casts, crutches, wheelchair
25. Hearing aids
26. TENS units
27. Disability-related items that have been approved through the testing accommodations petition process
28. Separate keyboard, mouse (wired or wireless), laptop riser/stand no higher than four inches and a solid color mouse pad with no writing on it.

**During the MBE sessions, the items listed above are allowed in the exam room, except pens, rulers, paperclips, highlighters, back supports, orthopedic cushions, pillows, bookstands or footrests, and laptops or laptop accessories. If you need any of these items due to a disability, you must request them through the timely filing of a Testing Accommodations Petition.**

Applicants who will be handwriting their exam answers, or who are required to handwrite in the event of a laptop/software malfunction, must bring their own standard blue or black ink ballpoint pens. Applicants must also bring their own pencils for the MBE portion of the exam (several

sharpened pencils are recommended). **Mechanical pencils are not permitted.** Pencil sharpeners and separate erasers will not be allowed into the exam room.

Please note that applicants **cannot** bring wallets, tissues, lip balm, cough drops/throat lozenges, gum, candy, or other food or drinks in the exam room. Water and tissues will be available nearby at the test centers.

If unauthorized items are brought into the exam room, either intentionally or inadvertently, they will be confiscated or noted, and the applicant will receive a Chapter 6 Notice and possibly additional sanctions imposed by the State Bar or the CBE. In accordance with the CBE's policies, applicants will receive a score of zero for any session during which they are found to have brought an unauthorized electronic device, such as a cell phone, digital watch or timer, or activity tracker device (e.g., Fitbit) into the exam room, as well as any additional sanctions the State Bar or the CBE may impose.

### Test center environment

While every effort will be made to keep the environment of the test center comfortable and quiet, there are times when events, conditions, or actions of third parties occur that are beyond the control of the State Bar or the CBE. For instance, the temperature of the test center may fluctuate due to the weather or the test center's cooling/heating equipment; applicants should be prepared for either warm or cold temperatures. Efforts will be made to keep the test center quiet, but there may be forces outside the control of the State Bar or the CBE that prevent such an environment from being guaranteed. You should come prepared to accommodate noises, such as those made by other applicants taking the exam, proctors carrying out their duties, people entering/exiting the exam room, equipment inside or outside the test center that may make sounds while operating, other meetings or conventions in the same facility, etc. Earplugs of the type specified earlier are strongly recommended.

### General instructions

1. Your admittance ticket contains your applicant number, your file number, and your NCBE number. **Do not write anything on the ticket.** You will be required to show your ticket to the proctor when you enter the test center. You must keep it in your possession throughout the exam.
2. If items other than those allowed are brought to the test center, you will be required to leave them at your own risk outside of the exam area. The State Bar, CBE, Office of Admissions staff, and proctors assume no responsibility for the safekeeping of items that you bring to the test center. You are not permitted access to those items while the exam is in session.
3. You should bring any small permitted personal items (e.g., prescription medication, foam earplugs, pens, etc.) into the exam area in a small, clear plastic bag. Larger items, such as pillows, do not need to fit into the clear plastic bag that holds your smaller items.
4. Signs will be posted showing seating assignments by applicant numbers. The number can be found on your admittance ticket. You must occupy the same seating space throughout the examination.
5. Upon arrival at your seat, you will be provided with a badge that will be your

identification credential during the exam administration, which you may be required to show at any time. The badge must be fastened so it can be easily seen by the proctors. You will be told to relocate the badge if it is not placed appropriately. The badge must be left at your seat during the lunch break.

6. At some time during exam administration, you may be required to provide your fingerprints. If you refuse to provide the required fingerprints, you will be issued a Chapter 6 Notice.

7. During the exam, you will be required to show a valid government-issued photo ID (e.g., driver's license, California Identification Card, or passport) for the purpose of identity verification. You must carry this photo ID card at all times during the exam.

8. At the beginning of each written (essays and PT) session of the examination, you will be instructed to write your applicant number, name, and signature in the upper right-hand section of each of your answer book covers. Do not write notes, outlines, answers, time schedules or make any marks on the inside or outside of your answer book covers. The answer book covers are used for administrative purposes only. Your personal information will not be provided to any graders. Applicant answers are identified by a code number **only**; nothing about an individual applicant is known to the graders.

9. You are not allowed to make notes from memory prior to the start of the examination session. If you are using your laptop computer, you may not access any notes or other documents on your computer after you have entered the secure examining area. Scratch paper will be distributed for each written session of the examination. Scratch paper is not permitted during the MBE portion of the examination. **You must not make notes or write anything on your admittance ticket. If writing is found on your admittance ticket, the ticket will be confiscated, and you will be issued a Chapter 6 Notice.**

10. If you are handwriting your answers, there is a separate answer book for each written question, and you must be certain that the answer to Question No. 1 is written in the book for Question No. 1, etc. Answers written in a wrong answer book or typed in the wrong answer window while using Examplify, or more than one answer typed in the text box screen while using Examplify, require special handling and could delay the grading of an applicant's answer.

11. If you need additional scratch paper or lined paper to write your answers during the examination, raise your hand and a proctor will provide you with what you need. Nothing written on scratch paper will be graded.

12. If you are handwriting, you should do so as legibly as possible. A ballpoint pen with standard blue or black ink must be used to write your answers. Answers to the essay and PT questions written in pencil are not acceptable. Only nonmechanical, soft lead #2 pencils may be used for the MBE portion of the exam. Neither highlighters nor white-out may be used on your answers to the essay and PT questions.

13. All answers to the MBE portion of the exam must be marked on the Scantron answer sheets provided. If you have circled or otherwise marked your answers in the question booklet, extra time to transfer answers to the answer sheet will not be granted. Only answers properly marked on the answer sheets will be scored.

14. Exam questions and used scratch paper may not be taken out of the exam room. After completing each session of the exam, all exam questions and used scratch paper must be placed in the envelope designated for that purpose.

15. If you handwrite your exam answers or any part thereof, it is your responsibility to turn

in your written exam answers to the proctors. If you have an answer that is partially handwritten because you were unable to complete your answer using your laptop, you must ensure that you complete and submit the form provided by the proctor, which will alert the Grading Department that you have an answer partially handwritten and partially uploaded. You cannot leave the test center with any exam materials, including your answers.

16. The exam is electronically timed, and the official time is kept by the announcer. However, you are allowed to keep track of your own time since wall clocks are not provided. During the instructions at the beginning of each session, you will be advised of the courtesy time warnings that will be given. Any failure on the part of the announcer to give the planned warnings will not affect the outcome of the exam or the grading process, and no extra time or other consideration will be granted.

17. Timing devices (i.e., watches and clocks) that are allowed to be brought into the exam test centers are to be used solely for the determination of the passage of time. They cannot have a digital display, must be silent, and cannot be larger than 4"x 4." Timing devices that are digital, programmable, and/or make noise are not permitted. If found, they will be confiscated, and the applicant will receive a Chapter 6 Notice.

18. Writing and typing of answers must be completed when time is called. Please note that extra time is not granted to any individual applicant for any reason. If you attempt to write anything after time has been called, you will receive a Chapter 6 Notice.

19. Restrooms and water will be available at each test center. You should use the facilities before taking your seat so that you do not miss the instructions prior to the start of each session. Extra time to use the restroom will not be granted. You will not be permitted to use the restroom or leave your seat during the last several minutes of the exam session (5 to 15 minutes depending on the session). After time is called, you will **not** be permitted to use the restroom or leave your seat until all materials are collected and inventoried. If you fail to remain seated after being advised to do so or while the exam materials are being collected and inventoried, you will receive a Chapter 6 Notice.

20. If you are leaving your seat for any reason, you should be considerate of others who are taking the exam. The scraping of chairs, heavy footsteps, or conversation just outside the exam area can disturb others.

21. If you leave the secure exam area during the exam session, you will not be permitted to return for the purpose of completing your exam answers.

22. At laptop computer test centers, laptop computers may not be disconnected from electrical outlets or removed from the exam room while the exam is in session, even if you have completed the exam for that session. You must wait until the exam session has concluded and applicants are dismissed before retrieving your computer.

23. The proctors' chief function is to proctor the exam; however, if asked, the proctors will attempt to assist with any problems that may arise.

24. If there is an emergency of any kind, you should remain seated and wait for instructions on how to proceed.

**No smoking**

**Smoking is prohibited at test centers located in buildings that do not allow smoking in accordance with city ordinances.** Regardless of whether smoking is prohibited, any applicant

who exits the secure exam area in order to smoke while the exam is in progress will not be allowed to re-enter to complete the exam.

**Laptop computer users**

After you have been notified that your admittance ticket is available, you are eligible to have your laptop registered for use during the exam. You must download and install the required security software (Examplify) onto your laptop, and you must complete the registration process by **February 17, 2023**, with the completion of one mandatory mock exam. Complete the following  steps to make sure your laptop is ready for exam day:

1. Download the required security software (Examplify) onto your computer and register with ExamSoft.
2. Take the one required mock exam and upload the answer files by **February 17, 2023**. The two  actual exam files will be downloaded automatically.

**Confirmation**: After you have downloaded the exam files, you will be advised by email from ExamSoft that you have done so. Those confirmation emails are the only certification that your laptop is ready for the exam. You may also check your status and view your download/upload history online by launching Examplify from your laptop and confirming you have the downloads. Log in using the Exam Takers box, click the Exam History button to review your record, and confirm that you have downloaded the exam and mock exam files, and have uploaded the mock exam answer files. It is the responsibility of applicants using laptops to timely upload their exam files containing their answers to the five essay questions and one Performance Test. Applicants who fail to upload their answer files by the published deadline will have a deduction of 10 scaled points taken from their scaled score. Applicants who fail to upload their answer files within two weeks of the published deadline will be given a grade of zero for each answer that is not received by the State Bar Office of Admissions by the published deadline. Applicants are expected to comply with the published deadlines; there are no waivers of the deadlines or the sanctions that will be imposed as a result of applicants' failure to upload their exam file.

**Exam attendance policy**

If you do not attend or are unable to complete a required, scheduled exam session, you will be considered a partial exam taker, and your exam will not be graded. For instance, if you are taking the exam in person, if you are absent for the Tuesday morning session, you will not be allowed to take any remaining sessions of the exam. If you are absent for any portion of the exam, you will be considered as having not taken the exam, and your written answers will not be graded. If you intend to take a future administration of the exam, you will be subject to the same application filing deadlines applicable to first-time applicants rather than the deadlines applicable to immediate repeaters, if any. Applicants must make a good faith attempt to complete each session of the exam for which they are present. Failure to do so may lead to receipt of a Chapter 6 Notice and being prohibited from attending any remaining exam  sessions.

**Late arrival to test center**

Applicants arriving at the test center after one hour of testing time has elapsed will not be permitted to enter the test center for any portion of the exam.

**Address change**

Applicants are encouraged to notify the Office of Admissions of a change of address as soon as possible. Applicants are able to update their admissions file with the new address by accessing their account through the Applicant Portal.

**Moral Character**

The Admissions Rules require a positive moral character determination before the CBE may recommend that an applicant be admitted to practice law. The process is initiated by filing an Application for Determination of Moral Character. The processing of these applications generally takes a minimum of 180 days and sometimes longer to complete. If you have not already filed a moral character application, you should do so now to avoid delays in your admission to practice law if you are successful on the California Bar Exam. The application must be filed online through your Applicant Portal.

**Admittance ticket**

Applicants will receive an email alerting them when admittance tickets are ready to be printed. The admittance ticket can be located in the exam case record through the Applicant Portal.

**Further communication**

For particular questions regarding your status or the other requirements for admission, you should contact the State Bar's Office of Admissions by sending an email directly from your Applicant Portal. If you need to contact the office by phone, please use one of the following numbers:

| **Los Angeles** | **San Francisco** |
| --- | --- |
| 845 South Figueroa Street | 180 Howard Street |
| Los Angeles, CA 90017 | San Francisco, CA 94105 |
| 213-765-1500 | 415-538-2300 |

**California Bar Exam results**

Results from the February 2023 administration of the California Bar Exam will be available to applicants through their Applicant Portal on May 5, 2023, at 6:00 p.m. Communications regarding exam results will be sent to the applicant's contact information on file. Please note that applicants will not be able to change their contact information the week before the exam results are released.

You may also determine whether your name appears on the pass list, which will be posted on the State Bar website on May 8, 2023. You will need your file number and applicant number, which are listed on the admittance tickets and ID badges, to access the pass list.

# EXHIBIT H

| | |
|---|---|
| **From:** | State Bar of California - Admissions |
| **To:** | terrence.brewer87@yahoo.com |
| **Subject:** | Re: Renewed Request for Re-evaluation [ ref:_00Dt0TZax._5008y7okKX:ref ] |
| **Date:** | Thursday, June 1, 2023 4:32:04 PM |

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Dear Mr. Brewer,

We are in receipt of your latest request for a grading reconsideration. I reviewed the material that you provided and it does not contribute to meeting the criteria for reconsideration. As explained in the letter sent to you in May, you are not eligible for a grading reconsideration.

We are denying your request.

Sincerely,

Amy C Nuñez

Assistant Director of Admissions


-------------- Original Message --------------
**From:** Terrence Brewer [terrence.brewer87@yahoo.com]
**Sent:** 5/26/2023 3:30 PM
**To:** admissions@calbar.ca.gov
**Cc:** lillian.do@usdoj.gov
**Subject:** Re: Renewed Request for Re-evaluation [ ref:_00Dt0TZax._5008y7okKX:ref ]

Hello,

As previously stated, The Bar holds all relevant information regarding whether there was a clerical or arithmetical error. However, attached is open source information from The Bar's and NCBE's website regarding scaling. As you can see, and as I'm sure you know, my scores are inconsistent with the intended effect of this method of grading. Please consider this information in your re-evaluation. Thanks.



**DECLARATION OF SERVICE**

I, Ryan Sullivan, hereby declare: that I am over the age of eighteen years and am not a party to the within above-entitled action, that I am employed in the City and County of San Francisco, that my business address is The State Bar of California, 180 Howard Street, San Francisco, CA 94105.

On April 17, 2025, following ordinary business practice, I filed via the United States District Court, Eastern District of California electronic case filing system, the following:

**DECLARATION OF AMY NUÑEZ IN SUPPORT OF DEFENDANTS THE STATE BAR OF CALIFORNIA, BOARD OF TRUSTEES, AND COMMITTEE OF BAR EXAMINERS' OPPOSITION TO PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF**

Participants in the case who are registered CM/ECF users will be served.

*See the CM/ECF service list.*

also served a copy on the following parties:

Terrence Brewer
4748 Whitney Avenue
Carmichael, CA 95608
terrence.brewer87@yahoo.com

By the following means:

☒    (***By U.S. Mail***) By enclosing the foregoing documents in a sealed envelope or package addressed to the persons at the addresses above and either:

     ☒    depositing the sealed envelope with the United States Postal Service, with the postage fully prepaid; or

     ☐    placing the envelope for collection and mailing following our ordinary business practices. I am readily familiar with the State Bar's business practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at San Francisco, California, on April 17, 2025.

*Ryan Sullivan*
_____
Ryan Sullivan